JOSHUA BURR v. ANN E. AND W. A. WILSON.

It seems that the emancipation of a minor, by marriage, under the Spanish law, is a discharge from parental power; gives him control of his personal property; and enables him to make contracts; but does not relieve him from all disabilities of minority, and especially in relation to real property.

Before the passage of the Act of 1848, "better defining the marital rights of parties," (Hart. Dig. p. 737,) certain rights were bestowed and exemptions granted to married minors, and these should be construed liberally to advance the ends intended, but not indefinitely, for other purposes than those designed, and to the injury of those for whom the law intended benefit.

The general power of making contracts is not expressly or impliedly included in any of the laws conferring rights on married infants; and consequently they have the right to avail themselves of their privilege, when any such contracts are attempted to be enforced.

Where the defendant pleaded infancy in a suit on a note, and the plaintiff replied that the note was given for necessaries furnished the defendant at her request, and defendant excepted on the ground that it was not stated of what the necessaries consisted, when, how or by whom furnished, or the value of the same, it was held that the exception was properly sustained.

It is scarcely necessary to say that the principles of the decision in this case, will not apply to a female married at the time or after the passage of the Act of 1848, (Hart. Dig. p. 737,) as by that Act she was made of full age, whether she had reached the age of twenty-one years or not.

Error from Harris. Tried below before the Hon. Peter W. Gray.

.· Suit by plaintiff in error, against defendants in error, commenced December 10th, 1846, on three promissory notes for $635 each, dated January 2d, 1843, payable one, two and three years after date, signed by the said Ann E., then Ann Eliza Hunt, and Ann D. W. Page, and indorsed to the plaintiff. Ann D. W. Page, who was the mother of Ann Eliza, had been discharged in Bankruptcy ; and the latter had since married her co-defendant. Plea of infancy. Replication " that it was not " true that said defendant Ann Eliza, at the execution of said " notes, was a minor, incapable of contracting ; on the con- " trary the said Ann Eliza was at the time fully capable of " contracting. But if true, that the said Ann Eliza was not of " full age, and incapable of making any binding contract, " which is not admitted, then the said plaintiff alleges that the " contract entered into was for necessaries furnished the said " Ann Eliza at her special instance and request." To so much of the replication as set up that the contract was for necessaries, &c., defendants excepted on the ground that it was not stated of what said necessaries consisted, when, how or by whom furnished, and the value of the same, &c. This exception was sustained, and the plaintiff did not amend. At the trial defendants proved that at the dates of the notes the said Ann Eliza was only fourteen years and six months old, but had been married and was then a widow. It did not appear when she was married. The Court instructed the jury that if they believed from the evidence, that the defendant Ann Eliza was under twenty-one years of age when she signed the notes, they should find for the defendants. Verdict and judgment for the defendants.


*C. W. Buckley* and *J. W. Henderson,* for plaintiff in error, cited Guirot v. Guirot, 3 La. R. N. S. 400 ; Babcock v. Peniman, 5 Id. 563 ; Grisby v. Louisiana Bank, 3 La. R. 492 ; Hart. Dig. Art. 2412, 1031, 1493, 2417, 173, 174, 2442, to the point that marriage removed the disabilities of minority ; that

.from the necessities of the case, marriage must have such effect, counsel cited 1 White, Recop. 4 ; Id. 7, 11, 13, 15, 17 ; 3 Comyn, Dig. 546, 548. The Court of Chancery will not appoint a guardian for a female after marriage. (1 Vesey, R. 160-91.)

*Jordan* and *Thompson*, for defendants in error, cited Wood's Civil Law, 140.

HEMPHILL, CH. J. In 1843 Ann D. W. Page and Ann E. Hunt executed to Joshua Burr, the plaintiff, three joint and several promissory notes payable in one, two and three years. Ann Eliza Hunt had been previously married, but was then a widow, and between fourteen and fifteen years of age. She subsequently intermarried with William N. Wilson, and suit was brought against her and her husband for the recovery of the notes. On trial there was verdict and judgment for defendants, and the plaintiff has brought up the cause by writ of error.

The defendants pleaded the infancy of Mrs. Hunt, at the time of executing the notes, and the principal question is whether she was bound in law to pay the notes, being under twenty-one years of age at the time they were made.

This cause has been discussed by counsel with ingenuity, ability and research ; and, with the aid of their expositions, we will proceed to consider the questions for our decision.

The counsel for plaintiff in error has referred to some decided cases in Louisiana to show the disabilities of minors not emancipated, and that marriage did emancipate a minor from such disabilities. Among others he refers to the case of Grisby v. The Louisiana Bank, 3 La. R. 492. This shows that marriage emancipated a minor under the Louisiana code, so far as to enable him to sell his personal but not his real property. Such emancipation is only partial, and the effect of marriage upon the disabilities of minors in Louisiana need not be further considered. But, as there has been reference to the

Vol. XVIII.            24

effect of emancipation by marriage, under the Civil Code of Louisiana, I will refer briefly to its effect under the laws of Spain, a subject of interest, especially as our laws on marital rights are in substance but a continuation of the rules of Spanish jurisprudence on the same subject matter. ·

It appears, then, by the Laws 47 and 48 of Toro, which are Law 3, Tit. 5, Lib. 10, Nov. Recop., that the minor, whether male or female, was forever emancipated on marriage ; that they should have for themselves the usufruct of their adventitious property although their father may be living.

But what is the extent of this emancipation ? The minor is discharged from paternal power, but the commentators, at least many of them, are of opinion that he has not all the rights of a major, until he reaches the age of maturity fixed by law. (Magro y Belena, Instit. Civil, Hispan. Ind. Vol. 1, p. 234-35-36; Hermosilla, p. 366.) Escriche, in his dictionary, under the word " Emancipacion," says it is not believed that a son, emancipated, can exercise all the rights of a father of a family. If he had not reached the age of twenty-five years, he will need a tutor or curator, as other minors, and the father himself, where the emancipation was not forcible, would be the legitimate curator. Under the word " Menor," (paragraph 12,) the same author says that the minor of eighteen years can administer his own property and that of his minor wife, (L. 7, Tit. Lib. 10, Nov. Recop.) but he does not therefore become a major. Until twenty-five years he has the benefit of restitution *in integrum ;* must appear in judicial proceedings by a *curator ad litem ;* and he cannot sell or encumber his real property without the decree of the Judge, although he may make other contracts. Under the word " Muger," the same author states that where a married woman who is a minor is about concurring in a contract to mortgage, grant or sell her property, the husband should petition the Court to appoint a curator to intervene in the making of the contract, since her emancipation by marriage has the effect only that her father

has no power over her, nor can he resume it after she becomes, a widow ; yet she is not to be reputed an adult and capable of self-government. This rule, as stated by Escriche, is, perhaps, to be understood with the qualification that the intervention of a curator is necessary only where the husband is also a minor, and not where he is an adult, and thus, in the opinion of some jurists, superseding the necessity of curator for his wife. (Hermosilla, p. 366.)

From this imperfect review of the Spanish Law, it appears that the emancipation of a minor, by marriage, is a discharge from paternal power ; giving him control of his personal property, and enables him to make contracts, but does not relieve him from all disability of minority, and especially in relation to real property.

We will now consider the effect of marriage upon the disabilities of minors, under the laws in force at the time of making these notes ; and it is admitted by counsel, that, by the Common Law introduced in 1840, the age of majority is twenty-one years ; but he insists that the marriage of a minor operated an emancipation from disabilities, and in support of this conclusion, he invokes the provisions of several Statutes as follows, viz. : a paragraph from the 6th Section of the Act of 1840, to adopt the Common Law, (Art. 2412, Hart. Dig.) " the minor capable of contracting matrimony, may give his or " her assent to any agreement which this contract is suscepti- " ble of." We may observe in this place, that by the previous Section parties were allowed to enter into antenuptial agreements, with such stipulations as they pleased, with certain exceptions which were specified ; and in the Section 6th, from which the clause giving capacity to the minor is cited, there is a proviso that the agreement be made by the written consent of both parents, if both be living ; if not, by that of the survivor ; if both be dead, then by the written consent of the minor's guardian.

The counsel continues his citations, viz. : from Sec. 37 of

the Probate Law of 1840, (Art. 1031,) the important part of which is to the effect that one entitled to a distributive share of, or holding property in common with, a succession, who shall have arrived at the age of twenty-one years or be married, or, if an infant, shall have a guardian legally appointed, may petition for partition. Again, Sec. 45, (Art. 1493,) of the same law is cited, to the effect that any father or surviving mother may, by deed or last will and testament, grant or devise the custody of a minor child which had never been married, &c. Also, that should the wife survive dissolution of the marriage, she may sue for and recover her property illegally sold during the coverture. (Art. 2417.) The counsel also cites the Acts defining the mode of conveying property in which the wife has an interest, (Arts. 173, 174,) as, in his view, authorizing the wife, though under twenty-one years of age, to sell her separate estate.

With reference to the first citation, viz. : the clause from the 6th Section of the Act of 1840, (Art. 2412,) which gave validity to marriage settlements though made by minors, provided there had been consent of parents, guardians, &c., it may be remarked that this provision, if not entirely *ex re nata* and without reference to provisions and difficulties in the English system of jurisprudence about being introduced, was adopted probably with a view to settle some conflict which had existed in that system, as to the effect of the minor's assent to the settlement of his or her property on marriage.

For a considerable period, it was uncertain whether a jointure made by a husband on his intended wife, she being a minor, was binding on the wife so as to bar her of her right of dower under the Statute of 27th Henry VIII. That Act declared " that every woman married, having a jointure, shall not claim title to any dower," making no exception in favor of infants. It was argued on the one hand, that the words were sufficiently comprehensive to embrace all married women, whether under or over age ; and on the other, that so remarkable an altera-

tion as to deprive an infant of her privilege, would have been more clearly expressed, if intended by the Act. The doubt was removed by the decision in Drury v. Drury, 3 Bro. Parl. Cas. 492, to the effect that women marrying under age may be barred of dower by a jointure made by their intended husbands previous to marriage. One of the grounds of this decision was, that a jointure was not to be considered as a compensation for dower agreed for by the wife, but as a provision conferred upon her, and that it was not founded upon the idea of contract, and hence it followed that in case of the wife being an infant, no objection arose from her incapacity to contract. (1 Bright, Hus & Wife, 455.) Lord Hardwicke, in his judgment in this case, said that a fair provision, made by a husband out of any other species of property than freehold estates, would be a good equitable jointure and a bar of dower, and that such provision, when settled on infants with the consent of parents and guardians, would be as binding as upon adults. (Id. 457.) These settlements of jointure, when certain and sufficient, were sustained as much for the benefit of the infant wife, and for the convenience of families, as they were upon any other ground. Whether the assent of parents or guardians was material to the validity of a jointure upon a wife, was a question upon which there was some doubt. But, though the infant wife was barred, by jointure, of her right to dower, yet the question how far she was bound by settlement of her own estate, still remained ; and it was decided that she was bound by settlement of her personal estate, for the reason that by marriage this would vest absolutely in her husband ; but it has been also held, after much diversity of opinion, that she is not bound by settlement of her real estate—such estate not vesting in the husband by marriage. (Trollope v. Linton, 1 Lim. & Stu. 477 ; 18 Ves. 259 ; 2 Kent Com. 261 ; Bri. Hus. and Wife, 153.)

In Bright on Husband and Wife, p. 154, it is stated that in many of the earlier cases an opinion prevailed, that parents

and guardians had a general authority to bind the property of infants by agreements on their marriage. This has been shaken by the cases which decide that an infant's real estate cannot be bound, and the principle upon which personal property is now held to be bound, seems to be that the marriage vests it in the husband, and it thereby becomes subject to the covenants contained in his articles.

It seems to be considered that if the husband be an infant at the time of the marriage, for the same reasons which apply to the case of a female infant, a settlement of his real estate would not be held binding upon him.

The provision in the Statute of 1840, giving validity to the marriage settlements of infants was admitted probably with a view to settle these disputed points, and *protanto* to remove the disabilities of infants about to enter into the married state, and cannot be held to remove their disabilities away further than to secure the object intended. It may be regarded to the extent of its operation, a repeal of the Law of Infancy. The provisions of marriage settlements are for the benefit of the parties to the agreement, as against the rights of each other respectively ; and a law giving the parties, though infants, the rights of adults with regard to these stipulations, cannot be construed to extend these powers for the benefit of third persons, and deprive the parties of the shield of infancy as against strangers to the agreements. The principles which bound female infants, on marriage, to accept of jointures, and bound infants by settlements of their own estates, have not been extended so as to give infants the powers and rights of adults generally, but only to the extent of the stipulations in the agreements or contracts ; and there appears no good reasons for departing from this rule of construction and giving the clause cited any greater extent than to support the agreements for which it was provided.

The two isolated provisions from the Probate Act of 1840, in the particulars specified, recognize the right of infants who

are or have been married, to the rights of adults, at least to some extent in the particulars that are specified. The first relates to the right of petition for distribution ; but it will be perceived that married persons are not mentioned elsewhere in any of the provisions of the Statute in relation to distribution, and especially as having standing in Court by virtue of the marriage. The next, that the father and surviving mother might by deed or will appoint a guardian for a child who had not been married, would relieve infants from the authority of a testamentary guardian ; but is that to be construed as exempting them from the laws authorizing Courts to appoint guardians selected by the minors themselves?

The guardianship of a female infant, as to her person, would of necessity cease on marriage, her husband having control over her person ; and the guardianship as to her property ceases also at Common Law, her property vesting in the husband by marriage. (Reeves' Dom. Rela. 328.) The guardianship as to her property would cease under the general provision of our system, authorizing the husband to have the sole management of the property of the wife. The provision of the Probate Act restricting the appointment of testamentary guardians was adopted, perhaps, with some reference to the effect of marriage upon guardianship, especially the marriage of a female infant.

Again, it is said that the laws defining the mode by which a married woman may convey her property, make no exception in favor of infants, and consequently give the like authority with adults.

But similar provisions exist in other States ; yet it has been held, it is believed without exception, that the conveyances of married infants, though with all the forms prescribed for married persons, are at least voidable, and may be avoided on their attaining age. (1 Paige's Chan. R. 488 ; 3 Id. 117 ; 17 Wend. 119.)

The whole of the provisions which have been cited, are be-

lieved to be no sufficient ground for holding that marriage, *ipso jure*, extinguished all the disabilities of infancy and deprived infants of their privileges. Certain rights were bestowed and exemptions granted, and these should be construed liberally to advance the ends intended, but not indefinitely for other purposes than those designed, and to the injury of those for whom the law intended benefit. The general power of making contracts is not expressly or impliedly included in any of the laws conferring rights on married infants ; and consequently they have the right to avail themselves of their privilege, when any such contracts are attempted to be enforced.

The demurrer to the plea of necessaries, was rightly sustained. The items of the account for necessaries should have been distinctly specified.

A plea that the debt sued upon was for necessaries, is too vague, and is inadmissible as a plea.

It is scarcely necessary to say that the principles of the decision in this case, will not apply to a female married at the time or after the passage of the Act of 1848, as by that Act she was made of full age, whether she had reached the age of twenty-one years or not.

There is no error in the judgment, and it is ordered that the some be affirmed.

Judgment affirmed.