CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT and CHASE, JJ., concur; GRAY and WILLARD BARTLETT, JJ., absent.

Judgment of conviction affirmed.

---

SALLIE COCHRAN, an Infant, by AUGUSTA J. BAILEY, Her Guardian ad Litem, Respondent, *v.* RICHARD COCHRAN et al., Appellants.

Husband and wife — marriage of minors — right of infant husband to his earnings as against his father — action for alienation — erroneous admission of evidence.

On the marriage of minors certain marital rights and obligations accrue which are at variance with substantial pre-existing parental rights, and the only warrantable manner in which a conflict between them can be avoided is by the subordination of the latter to the former.

The right of an infant husband to his earnings as against his father, so far at least as is necessary for the support of his family, necessarily results from the husband's duty to support the wife.

In an action brought by a wife against the parents of her husband to recover damages for the alienation of the husband's affections, she was allowed to give testimony of statements made by her husband with reference to the hostile attitude and disposition of his parents. *Held*, that it was incumbent on the wife to prove the unlawful conduct of defendants by competent testimony and it was not proper to give evidence of her husband's declarations on the subject.

*Cochran* v. *Cochran*, 127 App. Div. 319, reversed.

(Argued June 15, 1909; decided October 19, 1909.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 2, 1908, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George Ryall* for appellants. A minor son is not emancipated by marriage from the care, custody and control of his father when the marriage is without the consent and contrary to the expressed wishes of the father, nor is the father thereby deprived of the right to the earnings of the son. (*Matter of Whittaker*, 4 Johns. Ch. 378; *Sanford* v. *McLean*, 3 Paige, 117; *Bool* v. *Mix*, 17 Wend. 119; *Ryerss* v. *Wheeler*, 25 Wend. 434; *Comm.* v. *Graham*, 157 Mass. 73; *Pollock* v. *Pollock*, 9 Misc. Rep. 85.) The admission in evidence of statements made by the son, in the absence of the defendants, before and after the marriage, concerning the sentiments, hostility and probable action of the defendants on learning of the marriage, was erroneous. (*Pollock* v. *Pollock*, 9 Misc. Rep. 83; *Billings* v. *Albright*, 66 App. Div. 245; *Eldredge* v. *Eldredge*, 79 Hun, 511; *Manwarren* v. *Mason*, 79 Hun, 592; *Schultz* v. *U. R. Co.*, 181 N. Y. 33; *Hall* v. *Karnest*, 36 Barb. 591.)

*I. R. Oeland* and *G. Burchard Smith* for respondent. The evidence complained of by appellants was admissible as part of the *res gestæ* and its admission was not error. (*Billings* v. *Albright*, 66 App. Div. 239; *Baker* v. *Baker*, 16 Abb. [N. C.] 293; *Remsen* v. *Hay*, 24 Wkly. Dig. 443.) The reception of such testimony, if error, was harmless. (*Gates* v. *Bowers*, 169 N. Y. 14; *Foote* v. *Beecher*, 78 N. Y. 155.)

Hiscock, J. The plaintiff and defendant's son, in September, 1904, when both were only eighteen years of age, became married. The marriage was a clandestine and childish one,

which disclosed no reasonable probability of happily and successfully surviving the strain of actual experience, and was one which any sensible parent solicitous for the welfare of his child would have been justified in preventing by any available means within his lawful reach. The parties did not live together, the boy contributed nothing towards the support of the girl, and in a short time and before cohabitation had increased the undesirable possibilities of their foolish misadventure the husband left the plaintiff, and this action was brought to recover from the defendants, as the alleged promoters of his abandonment, the damages supposed to have been caused thereby.

While there is nothing but imagination or conjecture to connect the defendant Augusta Cochran with the not unnatural sequel, there probably was sufficient evidence to authorize the jury to find that the other defendant, the father, did without what could be regarded as legal justification induce and procure the son permanently to leave his wife, and that such conduct was unlawful and entitled the plaintiff to recover damages. These were assessed by the jury at very substantial figures.

Before proceeding to point out errors in one branch of the case which require a new trial, it seems desirable to refer very briefly to certain rights and duties of infant husband and wife which affect the measure of damages in such an action as this and concerning which some confusion seemed to prevail on the trial.

The trial court charged that the plaintiff was entitled to the society of her husband, and also to be supported by him. But it likewise charged that the father was entitled to his custody, services and obedience until he became of age, thus apparently recognizing the co-existence of conflicting rights. The jury also were instructed "they (the plaintiff and her husband) had the right to live together, even though the father had the right to the young man's wages."

There is no doubt that on the marriage of minors certain marital rights and obligations accrue which are at variance with substantial pre-existing parental rights, and the only

warrantable manner in which a conflict between them can be avoided is by the subordination of the latter to the former. So long as the law permits and recognizes marriage contracts between infants, it must confer and secure certain privileges and duties which are regarded as essential to the proper maintenance of that relationship.

The right of the wife to the society of her infant husband, even though in derogation of the original parental right of custody, has been so many times affirmed that it need not be dwelt on, although in this particular case the wife agreed to a very material abridgment of this right for a considerable period. So, too, the general rule is familiar that the wife is entitled to be supported by her husband, although an infant. But the subordinate proposition that the infant husband is entitled to his earnings as against his father, so far at least as is necessary for the support of his family, is less familiar, has been a subject of debate, and so far as we are aware has never been specifically adjudicated in this state. This right, however, obviously and necessarily results from the husband's duty of support. It would be quite illogical and unreasonable to say that the infant must provide for his wife and children and at the same time deny to him his wages wherewith to furnish such support, and in other jurisdictions where the question has been decided this view prevailed, although not universally. Thus the infant's right to his wages has been upheld in *Town of Sherburne* v. *Town of Hartland* (37 Vt. 528); *Holland* v. *Beard* (59 Miss. 161); *Chapman* v. *Hughes* (61 Miss. 339); *State ex rel. Scott* v. *Lowell* (78 Minn. 166); *Commonwealth* v. *Graham* (157 Mass. 73).

On the other hand it has been held in Maine that the above result did not follow at least in the absence of parental consent to the marriage from which an emancipation of the child might be implied. It is to be observed, however, that in that state the consent of a parent to the marriage of his minor son is required by statute. (*White* v. *Henry*, 24 Me. 531; *Inhabitants of Bucksport* v. *Inhabitants of Rockland*, 56 Me. 22.)

The plaintiff was well confined within the foregoing principles in the presentation of her case, and so far as they are concerned is entitled to an affirmance of her judgment.  But, as we have intimated, rules of evidence were elsewhere so transgressed as to require a reversal.

While she was on the stand, and speaking of a time a year prior to her marriage, she was allowed to testify as follows:

" Q. Did you do that (stop going to church) after any conversation with your husband ?   A. Yes.

" Q. What did he say ?

" [Objected to as incompetent, irrelevant and immaterial, and not binding on the defendant.  Objection overruled and defendant excepts.]

" A. He said that he could not sit with me in church any more, that his mother wouldn't allow him," etc.

The court refused to grant a motion to strike out this evidence, saying that it would allow it to stand, not as " Proof against the defendant at this time," but " merely as bearing upon their relations to each other."

In another place the following occurred:

" Q. What did he (the husband) say about keeping it (the marriage) secret?   A. That if his father knew it he would separate us, because he had had a cousin that had a picture in his pocket that he didn't like, and that they had sent him away for it, and he knew his father would send him away much quicker for that."

Defendant's motion to strike out this evidence as immaterial and irrelevant was denied, it being allowed to stand as " merely explanatory of the reason why the marriage was kept secret."

Again, subject to proper objection and exception, plaintiff was allowed to state that on another occasion after the marriage her husband said " that his father told him that he didn't want him to go out of the house, and Ernest (the husband) said, why not?   He said, you are going to obey me, and Ernest said to him, you should have told me that a long time ago," etc.

On the strength of these rulings, and without unnecessary repetition of similar objections which defendants' counsel had the right to assume would be overruled, the plaintiff was allowed to give other testimony of statements made by her husband with reference to the hostile attitude and disposition of his parents.

We think it is unnecessary to take time for the purpose of arguing that this evidence was very prejudicial to the defendants, and we know of no authority which justified its introduction.   While of course plaintiff was required to prove the unlawful conduct of defendants, and while such unlawful conduct might be evidenced by such acts as were outlined in the evidence referred to, it was incumbent upon her to prove the same by competent testimony, and it was not proper to give evidence of her husband's declarations on the subject.   Such evidence offended against the general rules of evidence and has been specifically condemned in actions similar to this one. (*Huling* v. *Huling*, 32 Ill. App. 519; *White* v. *Ross*, 47 Mich. 172; *Preston* v. *Bowers*, 13 Ohio St. 1; *Manwarren* v. *Mason*, 79 Hun, 592.)

For these reasons the judgment should be reversed and a new trial granted, with costs to abide event.

EDWARD T. BARTLETT, J. (dissenting): This is an action brought by a wife against the defendants, the parents of her husband, to recover damages for the alienation of his affections.   The jury rendered a verdict for $7,500, and judgment was duly entered, which has been affirmed by the Appellate Division.

This case involves a sad story of domestic infelicity.   Two young people of Christian training and association have, by reason of a series of unfortunate circumstances, wrecked their married life, and, so far as this record discloses, are hopelessly alienated and separated.   The marriage was celebrated on September 21st, 1903.   The friendship and resulting engagement of the parties had preceded this event by about a year and a half.   This action was commenced in September, 1904.

The fact of the marriage was not disclosed to the defendants until February, 1904. At the time of the marriage these parties had respectively attained the age of eighteen years.

It is conceded that the bitter opposition of the husband's father to the engagement of his son to the plaintiff, or his paying to her attentions in contemplation of matrimony — passing the severity of manner by which it was manifested — is not open to legal criticism, as the parties had not reached the age when they could enter into a valid contract of marriage. A portion of the record is made up of this early opposition to the association of the parties, but it is without significance save as throwing a sidelight on the character and temper of the husband's father and early origin of his bitter opposition.

It is established by competent proof that the father was fully advised, after he learned of the marriage, that it was valid and no legal proceedings could be instituted to set it aside. It is unnecessary and quite impossible to go over in detail the bitter and vindictive actions of the father notwithstanding his knowledge that a valid marriage existed. He insisted upon separating and did separate the parties; he sent his son to a distant point in the far West without the knowledge of the young wife; he manifested by word and act his intention to override the marriage contract without regard to the fact that it was permitted and protected by the law of the land.

There remains one more scene in this unfortunate domestic drama, to which reference may well be made, as characterizing the temper of the father. It appears that after the husband had returned from the West and manifested no intention to support his wife, she sought legal advice. This resulted in the issuing of a warrant for the arrest of the husband upon a complaint charging him with non-support of his wife. The details of this phase of the case are a pitiful story and may well be abbreviated. The wife testified that the magistrate suggested in open court that the parties should live together and it was agreed by the husband and on his behalf that he would live with his wife. Immediately there-

after was enacted a scene which can only be described as a deliberate fraud upon the court in order to secure a discontinuance of the criminal proceeding. This wife was taken by her husband one evening, in company with his father and his cousin Henry, to a bare and comparatively unfurnished room or apartment, where there was no preparation or arrangement made for housekeeping, and where a miserable night was passed, the husband and wife remaining in one room and the husband's relations in an adjacent room opening off. It appears that the husband and wife remained fully dressed during the night and that their relations were of the most formal character, being practically under the surveillance of said third parties. The marriage at that time had not been physically consummated and the father of the husband took good care that it should not be. The next morning the party vacated the premises, and that was the last, so far as this record discloses, of the home where this husband and wife were to carry out the kindly suggestion of the magistrate. The one object of this most remarkable proceeding was accomplished, however — the criminal action against the husband was discontinued.

It is very clear, without going further into detail, that there was abundant evidence from which the jury could determine whether these defendants had been guilty of conduct which resulted in the alienation of this husband's affections from a wife who had always been ready and willing to carry out her part of the marriage contract.

It is true, as has been suggested, that the participation of the mother of the husband was slight, although the record discloses enough to have satisfied a jury that she was in full sympathy with all her husband did.

It is now proposed to reverse this judgment on the following rulings of the trial court. The plaintiff was on the stand testifying to a time prior to her marriage. She was asked this question: "Q. Did you do that (stop going to church) after any conversation with your husband? A. Yes. Q. What did he say? [Objected to as incompe-

tent, irrelevant and immaterial and not binding on the defendant. Objection overruled and defendant excepts.] A. He said he could not sit with me in church any more; that his mother wouldn't allow him, and that if he came to church it would be very peculiar, I sitting on one side of the church and he on the other. Q. When was this conversation? A. I cannot be sure about the time; it was about a year before we were married.

"Defendant's counsel: I submit that it is entirely immaterial and irrelevant; it isn't after the marriage; it doesn't show anything as interfering with her marital rights and I move to strike it out.

"The Court: I will let it stand, didn't sit together for the reason that he intimated that his mother didn't approve of it.

"Defendant's counsel: I except.

"The Court: It isn't any proof against the defendants at this time.

"Plaintiff's counsel: I do not so urge it.

"The Court: Merely as bearing upon their relations to each other."

"Q. What did he say about keeping it (the marriage) a secret? A. That if his father knew it he would separate us, because he had a cousin who had a picture in his pocket that he did not like and that they had sent him away for it and he knew his father would send him away much quicker for that.

"Defendant's counsel: I move to strike it out as immaterial and irrelevant.

"The Court: No, I think I will let it stand; it is merely explanatory of the reason why the marriage was kept secret.

"[Defendant excepts.]"

The record discloses that this question was not objected to prior to the motion to strike out.

There are several answers to these objections and exceptions. (1) These facts are a part of the *res gestæ*, as held by the Appellate Division; (2) in showing the attitude of the husband's father throughout this unfortunate affair it is

entirely competent to prove when that opposition developed
and follow it down to its final results; (3) the evidence to
which objection is made is unimportant and has no such
bearing upon the final result as warrants reversal.

The facts involved in this controversy ought not to be
dragged into the light of day and submitted to another jury
unless the appeal involves legal errors that this court is not
justified in overlooking.

The judgment and order appealed from should be affirmed,
with costs in all the courts.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT and
CHASE, JJ., concur with HISCOCK, J.; EDWARD T. BARTLET, J.,
reads dissenting opinion.

Judgment reversed, etc.