Cropsey, J.
The court directed a verdict for the defendants and then entertained a motion for a new *392 trial, which was taken under advisement. The action is for alienation of affections. It was brought by the wife against the parents of her husband who had married her before he was of the age of consent. After this action was commenced and before its trial the defendants had procured an annulment of the marriage of their son with the plaintiff in an action brought by them for that purpose. Upon the trial this judgment was held to be a bar to this action. The propriety of that ruling has been carefully considered.
At common law a marriage between infants of the age of consent created a status as valid and binding as a marriage between adults. The marriage of infants who had not reached the age of consent also created a recognized status, but one subject to being disaffirmed by the parties upon arriving at the age of consent and this either with or without a judicial decree. If not so disaffirmed an election to affirm the marriage was readily inferred from slight circumstances and no new or other ceremony was necessary to complete or perfect the marriage. As 'Schouler says, the parties became ‘ ‘ bound forever ’ ’ by reason of their election to remain husband and wife. The one marriage was valid from its inception for all purposes; the other was neither strictly void nor strictly voidable, and was considered as inchoate and imperfect, but, if not disaffirmed, as already stated, it ripened into a marriage equally valid for all purposes. Schouler Dom. Rel. (5th ed.) § 20; 1 Bishop Mar., Div. & Sep. §§ 576, 577, 580; 2 Kent Comm. (14th ed.) 78, 79; 1 Co. Litt. (Thomas’ ed.) 123.
The common law doctrine of permitting the parties themselves to effect the dissolution of such a voidable marriage without judicial decree has never obtained *393 in this state. At an early date a statute was enacted (Laws of 1841, chap. 257) authorizing the chancellor in certain cases to declare a marriage void because contracted by a wife when under fourteen years of age. And the decisions held that a marriage cannot be dissolved by the parties, because it is more than a mere contract and is in the nature of “an institution regulated and controlled by public authority, upon principles of public policy, for the benefit of the community.” Wade v. Kalbfleisch, 58 N. Y. 282, 284; 2 Van Santvoord’s Equity Practice (3d ed.), 249; Bennett v. Smith, 21 Barb. 439, 441. At common law a sentence of the court annulling such a voidable marriage made it void from the beginning. 1 Bishop Mar., Div. & Sep. § 259; Perry v. Perry, 2 Paige, 501, 504. But the effect of this doctrine upon the children born of such marriages was so in conflict with the proper conceptions of the public welfare that statutory changes were early enacted whereby such marriages became void only from the time they were judicially so declared. 2 R. S. § 4, p. 139. And a similar provision is now found in the Domestic Relations Law, section 7. See Price v. Price, 124 N. Y. 589, 599.
With the exceptions noted, the statutes of this state seem to have made no substantial change in the common-law rule with respect to the rights, obligations and incidents arising from the status created by a marriage between infants who had not reached the age of consent. Such a marriage is voidable, but until annulled by a competent legal tribunal it is valid for all purposes and from it flows all the attributes attendant upon the marriage contract. 1 Bishop Mar., Div. & Sep. § 271; Perry v. Perry, 2 Paige, 501. So under the provisions of the Revised Statutes (2 R. S. p. 139, § 6), which are similar to *394 the provisions of subdivision 5 of section 7 of the Domestic Relations Law, a husband or wife was permitted to remarry, although previously married, if the former husband or wife had been absent for a given number of years. Under this the court held that cohabitation between the parties to the second marriage, even after learning that the first husband or wife was living, was not such criminal adultery as would authorize the rightful husband or wife to maintain a bill for divorce; that the first marriage was merely in abeyance, and that the remedy of the rightful husband or wife was to bring an action to have the second marriage annulled and that in the absence of such a decree the second marriage continued with the same force and effect as if the rightful husband or wife had not been living when it was solemnized. Valleau v. Valleau, 6 Paige, 207. See, also, Griffin v. Banks, 24 How. Pr. 213; reversed on another point, 37 N. Y. 621; Stokes v. Stokes, 198 id. 301, 305.
Where a woman contracted a second marriage while her first husband was living the second marriage was declared absolutely void although after such second marriage the prior one had been annulled on the ground that the wife’s consent thereto had been obtained by the fraud of her first husband. The ground of this decision was that the first marriage was only voidable and not void. McCullen v. McCullen, 162 App. Div. 599. See, also, Taylor v. Taylor, 63 App. Div. 231; affd., 173 N. Y. 266. So a second marriage contracted by a woman in the mistaken belief that her first husband was dead entitles her to dower in the lands of the second husband if her marriage to him has not been annulled. Jones v. Fleming, 37 Hun, 227; reversed on another point, 104 N. Y. 418; but see page 430; Jones v. Zoller, 29 Hun, 551; Price v. Price, 124 N. Y. 589, 600. In such a case the widow *395 of the second husband is entitled to letters of administration. White v. Lowe, 1 Redf. 376. See, also, Hendrick v. Biggar, 66 Misc. Rep. 576, 583; modified and affirmed, 151 App. Div. 522.
“ The legality of the marriage status and of all the consequences ordinarily flowing therefrom, from the time the voidable marriage relationship began until its annulment, is undisturbed.” Houle v. Houle, 100 Misc. Rep. 28, 29. See, also, Chittenden v. Chittenden, 68 Misc. Rep. 172, 175; Gall v. Gall, 114 N. Y. 109, 120; Barker v. Barker, 172 App. Div. 244, 250.
It necessarily follows.that the parties to a marriage voidable under section 7 of the Domestic Delations Law are legally married for all civil purposes up to the time of the adjudication of nullity. Until that time the marital rights created by the marriage continue unimpaired. The wife has the right to enjoy the society and companionship and to possess the love of her husband, and it is without doubt his duty to support her. Price v. Price, 124 N. Y. 589, 599. In the instant case the wife was of age when the marriage was contracted yet her marriage to her husband then under age was not a criminal act, even if it be morally reprehensible, and the law does not penalize her otherwise than by providing a contingency whereby her status may be changed by the marriage being annulled. Her marriage is immune from attack except by those expressly empowered by statute and in the .manner expressly authorized. In that way only may the status be changed. Otherwise the wife is entitled to the enjoyment of the usual and recognized rights arising from the married relationship. Even the adultery of the husband is not a bar to an action by him for criminal conversation with his wife committed after the institution of the divorce action brought by the wife but before the final *396 decree has been entered. Purdy v. Robinson, 133 App. Div. 155.
In the instant case the alienation charged occurred before the marriage was annulled. At that time the plaintiff’s rights as wife all existed and she had the right to maintain an action for the alienation of her husband’s affections. Such an action may be maintained by her against strangers and also against her husband’s parents. Hutcheson v. Peck, 5 Johns. 196 (said in note L. R. A. [N. S.] 323, to be the leading case); Pollock v. Pollock, 9 Misc. Rep. 82; Cochran v. Cochran, 196 N. Y. 86. These were cases in which the parties were of legal age when they were married, but from what has previously been said the same must be true even when one or both of the parties married under the age of consent. The only difference would be that if prior to the trial of the alienation action the marriage had been annulled, that would have a bearing upon the amount of the damages that might be recovered. In that event the damages would necessarily be confined to those sustained between the time of the alienation and the decree of annulment.
Nor does the fact that the husband’s parents brought the action of annulment affect the question. Section 1744 of the Civil Code authorizes either parent to bring an action to annul such a marriage. The reason for this is apparent. The statute is declaratory of the public policy which makes marriage under a certain age unwise from the standpoint of the welfare of society. So if an infant does marry notwithstanding this prohibition his parents, as his natural guardians, are authorized to sue for an annulment. And in so doing the consent of the infant is not essential. If such an action is brought by the parents and if they do not interfere with the marital *397 rights of the wife otherwise than by the institution and prosecution of that action the wife can have no right of action against them. In such a case while the act of the parents may result in the annulment of the marriage and thus the loss to the wife of her marital rights she would have no legal ground for complaint, for the parents had done only what they were expressly authorized by statute to do. And for exercising that right, in good faith, they cannot be made liable to an action for damages. So long as the parents act solely under the provisions of the statute they are immune. But they may not otherwise, and pending an action of annulment brought by them, deprive the wife of her husband’s presence and society and of the enjoyment of her marital rights. The sole parental right and immunity in this matter is that conferred by statute. No other may be inferred by necessary implication. If it could be so contended it would be conclusively answered by the fact that an action brought pursuant to section 1744 may or may not terminate successfully in a decree of annulment. Allerton v. Allerton, 104 Misc. Rep. 627, 629; Marone v. Marone, 105 id. 371; Magee v. Nealon, 108 id. 396; Cunningham v. Cunningham, 206 N. Y. 341.
It follows that the direction of a verdict for the defendants was error and that the motion for a new trial should be granted.
Motion granted.