## MRS. BIRDIE M. GOING v. L. C. GOING, et al.

Western Section. October 19, 1928.

Petition for Certiorari denied by Supreme Court, February 9, 1929.

W. C. Rodgers, of Memphis, for appellant.
Ewing, King & King, of Memphis, for appellee.

SENTER, J.  To the end that the questions involved on this appeal may be more clearly understood, we deem it expedient to give a summary of the history of the litigation.

Mrs. Birdie M. Going obtained a decree for an absolute divorce from her husband, L. C. Going, and there was awarded to her by the court as alimony, $4000, which was paid to her in cash by Going, and the further sum of $1800 for her support and maintenance, and also $150 per month beginning August 1, 1920. The decree for alimony as above set forth was a consent decree. Considerable litigation between the parties resulted from the failure of Going to pay to his divorced wife the $150 per month, and the case went to the Supreme Court twice. The first appeal to the Supreme Court grew out of a petition filed by Mr. Going to have the alimony decree modified. This resulted adversely to Mr. Going. Subsequently there was a petition filed by his divorced wife seeking to have him adjudged in contempt of the court for the failure to pay the $150 per month alimony adjudged against him. This question also went to the Supreme Court on appeal and it was held that the contempt proceedings could not be maintained under the facts and circumstances, the opinion stating, "We think that under the facts and circumstances shown by the record in this case attachment for contempt is not a proper remedy, and that the appellee must enforce her claim for alimony by other appropriate proceedings."

On December 13, 1926, Mrs. Birdie M. Going procured an execution to be issued on the alleged alimony judgment, and this execution was returned, there being no property of defendant to be found upon which to levy the execution, garnishment was served upon Employers Indemnity Company, M. L. Martin & Co., Agents. Prior to this time Mr. Going had married again, and his second wife, Mrs. Verna Going, filed a petition in the cause, as guardian of defendant, L. C. Going, praying that said execution be quashed and said judgment be satisfied of record. The petition recited that petitioner was the lawfully constituted guardian of said L. C. Going, who had been adjudged a non compos mentis, and recited that the former wife had caused the execution on the alimony judgment of July 15, 1919, to be issued. The petition sought to quash the execution on two grounds. First, because said judgment had been fully satisfied and released by the said Mrs. Birdie M. Going and a written

release of said judgment had been signed by Mrs. Birdie M. Going, and the written release was exhibited with the petition. Second, because said L. C. Going, being non compos, was no longer obligated and bound by said judgment.

Mrs. Birdie M. Going filed an answer to this petition, and in which she denied that the said judgment for alimony had been satisfied and denied that she had executed any valid release of said judgment, and stated in her answer that no consideration was given to her for the execution of said alleged release and satisfaction of said judgment, and that the same was therefore void for lack of consideration.

The issues thus presented by the petition and answer were heard by the Chancellor and the court held that said release and discharge was without consideration, and not therefore binding, and dismissed the petition and motion to quash the execution. The cause was heard on January 17, 1927, but by inadvertence no decree overruling the motion and dismissing the petition was entered until October 1, 1927, when there was a nunc pro tunc decree entered. It appears that on May 5, 1927, which was after the hearing of the cause, but before the nunc pro tunc decree was entered, Mrs. Birdie M. Going moved the court for a conditional judgment against the garnishee defendant, Employers Indemnity Corporation, and on May 9, 1927, a conditional judgment was given her against the garnishee for the sum of $13,500, and notice was ordered to be issued to the garnishee of the rendition of the conditional judgment, and requiring it to appear at the next rule day to show cause why the conditional judgment rendered against it should not be made final. The garnishee defendant answered, and on July 30, 1927, a consent decree, consented to by Mrs. Birdie M. Going and the defendant Insurance Company, the garnishee, was entered, and which decree recites in part as follows: ''That an agreement has been effected between the said Birdie M. Going and the garnishee, that it was indebted to said L. Clyde Going in the sum of $2850, and that said amount had been paid to her and discharging the garnishee.'' On August 24, 1927, Verna K. Going, in her capacity as executrix of L. Clyde Going, deceased, who it appears died testate on February 3, 1927, filed a petition in the cause, setting up and averring in the petition in substance that L. Clyde Going had been adjudged a non compos mentis on December 29, 1926; that on January 6, 1927, she was duly appointed guardian, and filed her petition and motion setting up grounds for the quashing of said execution, which matter was later heard by the Chancellor and taken under advisement, a few days before the death of said Going, and that said motion and petition had never been dis-

posed of by any decree of the court or orders entered in said cause. The petition further averred that the petitioner was the designated executrix in the will of L. Clyde Going, deceased; that she had the right to intervene in the cause; that said cause should be revived in her name as executrix in order that she could make proper defense; and further averred that on July 30, 1927, during the absence of her attorney from the jurisdiction of the court, and without his or her knowledge or consent, the complainant, Mrs. Birdie M. Going and the garnishee defendant, procured the entry of the consent decree by which Mrs. Birdie M. Going was paid the sum of $2850 by the garnishee insurance company. The petition alleged that this $2850 rightfully belonged to the estate of the deceased. This petition also sought to have said execution quashed, and set out numerous grounds which will later be referred to. On October 1, 1927, a decree was entered in the cause setting aside the consent decree of July 30, 1927, and reserving for further hearing the issues made by this second petition of Mrs. Verna K. Going, Executrix, and the answer thereto.

We failed to refer to the fact that when the learned Chancellor overruled and disallowed the petition first filed by Mrs. Verna K. Going, as guardian, to quash the execution, Mrs. Verna K. Going excepted to the action of the Chancellor and prayed an appeal to this court. The Chancellor declined to grant the appeal at that time, but permitted the petitioner to take and file a wayside bill of exceptions, which wayside bill of exceptions is made a part of the record in this cause.

Upon the hearing of the second petition to quash the execution, the Chancellor held that the second petition and motion to quash the execution was predicated upon the theory that the first petition to quash was not disposed of during the lifetime of Mr. Going and had not been disposed of at the time of the filing of the second petition. The Chancellor held that the first petition had been heard and overruled prior to the death of Mr. Going, but that the decree of dismissal had not formally been entered, and the decree was made the subject of a nunc pro tunc order on October 1, 1927. The Chancellor further held that all of the grounds set forth in the second petition to quash, with the exception of one, could have been made in the first petition, and were matters proper to have been made in the first petition, and not having been made in the first petition, would be res adjudicata, and dismissed the petition and motion to quash the execution.

From this action of the court the petitioner, Mrs. Verna K. Going, prayed and was granted an appeal to this court, and which appeal has been duly perfected, and errors assigned. By the first assignment

of error it is claimed that the court erred in holding that the instrument of release and satisfaction of the alimony judgment, set up by the petition and motion of the guardian, was not binding on the complainant because of a lack of consideration. The second assignment of error challenges the correctness of the holding of the Chancellor that the motion and petition of the guardian was res adjudicata as to the grounds set up in the motion and petition of the executrix. All the other assignments of error are directed against the ruling of the Chancellor on each of the several separate grounds relied upon by the petitioner in the petition to quash the execution.

Without going into a discussion of each of these said several assignments of error, except the first, we are of the opinion that there was no error in the action of the court. We are of the opinion that these grounds contained in the second petition could have, and should have, been relied upon in the first petition, except the ground with reference to Mr. Going having died after the first petition had been filed, and this is not material. We are of the opinion, therefore, that the Chancellor correctly held that as to these other matters and grounds relied upon in the second petition, it was res adjudicata.

We fully concur in the conclusions of law reached by the Chancellor on the several grounds contained in the motion and petition to quash set forth in the second petition, the petition filed by the executrix, and to that extent adopt the opinion of the Chancellor, which is as follows: ·

"It is unnecessary to notice the various grounds set up in the petition to quash, filed by the executrix. All of them could have been made in the first petition, with the exception of the death of Mr. Going satisfied the judgment. That death does not satisfy a decree for alimony is stated in 28 Ruling Case Law, pages 566 and 567 (see also 18 A. L. R., 1038). It appears that the decree for divorce and alimony, July 11, 1919, awarded execution to enforce the collection of the allowance made by complainant; this disposes of the contention that complainant was not entitled to execution without order of court. As to the contention that the execution did not follow the judgment, in that credit for certain payments made by Mr. Going was not shown and that the amount of costs was stated to be $13,200, did not render the execution void. It was voidable only at the instance of the party affected. Mrs. Verna K. Going, as Guardian, filed her petition and motion to quash the execution on the grounds, alone, that Birdie M. Going had 'satisfied said judgment in full and released said L. Clyde Going from the same,' and 'that the said L. Clyde Going is a non compos 'mentis and by reason of this fact is no longer ob-

ligated and bound by said judgment.' No attack was made on the execution because it did not follow the judgment. As a matter of fact, the credits claimed amount to only some $3021.-31, leaving a balance of some $10,000. Complainant by the execution and garnishment only impounded $2,850.

"The money reached by the garnishment was not exempt under any statute of this State. . . ."

The Chancellor then proceeds in his opinion with the further statement:

"The amount of alimony decreed by this court, was, as I understand, fixed with the consent of Mr. Going. There can, therefore, be no objection raised as to the allowance. Certainly it seems to me, Mrs. Birdie M. Going, the wronged wife, to whom the court decreed alimony, and also impounded this money by garnishment, before Mr. Going's death, is in law entitled thereto as against creditors of Mr. Going's estate or his second wife."

This last statement by the court in his able opinion, is, of course, upon the assumption, that Mrs. Going did not release and satisfy the judgment for alimony by the written release signed by her and contained in the record, and which the court had previously held not to be binding upon her because of failure of consideration.

This brings us to a consideration of the question made by the first assignment of error. Upon the hearing of the issues tried before the Chancellor presented by the first petition filed by Mrs. Verna K. Going to quash the execution and the answer thereto, the Chancellor held, that by a preponderance of the evidence, at the time Mrs. Birdie M. Going signed the instrument releasing Mr. Going from the alimony judgment and satisfying the same, that it was executed by Mrs. Birdie M. Going upon an agreement by Mr. Going that he would pay the tuition in school of their daughter, Loraine, and make other contribution to her support, including the payment of certain hospital and doctor's bills. The Chancellor further held that Going was under the legal obligation to bear this expense as the father of Loraine, who was then a minor under the age of twenty-one years, and that he then being under the legal obligation to bear this expense, his agreement to bear the same did not constitute any consideration passing to his first wife for executing the release of the alimony judgment.

It appears that this minor daughter had married, and that she had not at that time obtained a divorce from her husband. This fact appears from the evidence that at the time Mrs. Birdie M. Going is alleged to have entered into the agreement with her former husband whereby she was to sign a release and satisfaction of the

alimony judgment, she was then in her former husband's law office discussing with him the matter of their daughter, Loraine, getting a divorce from her husband. It does not appear from the record whether Loraine's husband was then living separate from Loraine, but she was preparing to sue for a divorce. The question now made under the first assignment of error is that Loraine had been emancipated from all parental control or parental obligation for support by reason of her marriage, and that her marriage operated as complete emancipation, and that her father was not then legally obligated to support his minor daughter after her marriage. This question was only incidentally referred to, and does not seem to have been considered by the Chancellor.

The question of the marriage of a minor daughter operating as emancipation so as to relieve the father of the legal obligation of supporting and providing necessaries, does not seem to have been before the court in this State. However, the question has been frequently before the courts of others States, and is discussed in the text books.

Our attention has been called by solicitor for appellee in the excellent brief filed to the case of Foot, Attorney-General, v. District Court, etc., (Montana) 250 Pac., 973, where it is said:

"Although marriage may, and under our statute does, emancipate a child from parental authority, it has otherwise little effect. (Boole v. Mix, 17 Wend., 119, 31 Am. Dec., 285). The disabilities of infancy remain in the absence of express statutory provisions. (31 C. J., 1009). In other words, while marriage releases a child from parental authority, it does not change the status of a child from that of a minor to that of an adult, within the meaning of statutes defining those terms, unless some statute expressly so provides. (Trammell v. Trammell, 20 Tex., 406; Taunton v. Plymouth, 15 Mass., 203; Austin v. Austin, 167 Mich., 164, 132 N. W., 495, Ann. Cas., 1913-A, 545.)"

The reference to the above case and the authorities therein cited, are relied upon by appellee in support of the contention that marriage of an infant child does not operate to relieve the father of the legal obligation of supporting his minor child.

However, an examination of that case and the authorities therein cited are on other questions and subjects. Those cases simply hold that marriage, without a special statute so providing, will not operate to make an adult of a minor. It would not operate to give her legal capacity or to overcome the disability of infancy. But even in the case and authorities above quoted marriage does emancipate a minor child from parental authority, and as stated "while mar-

riage releases a child, it does not change the status of the child from that of a minor to that of an adult." In the Mississippi case of Beard v. Holland, 59 Miss., 164, it is said:

"An essential element in the marital relations is the right of the husband to the services and society of the wife, to the exclusion of all rights of the parent, and therefore a legal marriage is a legal emancipation from parental control."

In Commonwealth v. Graham (Mass.), 31 N. E., 707, it is said:

"There seems to be little doubt that when an infant daughter marries, she is emancipated from the control of her parents." (Citing Aldridge v. Bennett, 63 N. H., 415; Burr v. Wilson, 18 Texas, 367; Porch v. Fries, 18 N. J. Eq., 204; Rex v. Wilmington, 5 Barn. & Ald., 525; Norfield v. Brookfield, 50 Vermont, 62.)

In Aldridge v. Bennett, supra, it is thus stated:

"The marriage of a female infant, if above the age of legal consent, is valid, although contracted and entered into in defiance of parental wishes and authority. . . . Being valid the same legal consequences must follow from it, whether contracted in obedience to parental preferences, or in opposition to them. In either case, the parent is no longer entitled to the services and earnings of the infant married daughter. The new relation created by the marriage being inconsistent with the enforcement of parental rights, operate as an emancipation from them."

In Perkins v. Westcoat, 33 Pac., 140, it is said:

"Upon the marriage of Ella with the defendant, the relations which she had sustained to her mother were entirely changed. The obligation of her mother for her maintenance and her obligation to render service to her mother ceased. Her husband then became liable for her support and for that of her child when born."

In the case of Cochran v. Cochran, 196 N. Y., 89, we have this discussion and statement of the rule:

"There is no doubt that on the marriage of minors certain material rights and obligations accrue which are at variance with substantial pre-existing parental rights, and the only warrantable manner in which a conflict between them can be avoided is by the subordination of the latter to the former. So long as the law permits and recognizes marriage contracts between infants, it must confer and secure certain privileges and duties which are regarded as essential to the proper maintenance of that relation. . . ."

In a further statement on the same subject it is said by the court, speaking of the right of an infant husband to his earnings upon his marriage:

"This right, however, obviously and necessarily results from the husband's duty of support. It would be quite illogical and unreasonable to say that the infant must provide for his wife and children and at the same time deny to him the wages wherewith to furnish such support."

The Supreme Court of the State of Minnesota, in the case of State v. Lowell, 80 N. W., 78, makes this statement:

"The marriage of a minor, even without the parents consent, emancipates a child from the custody of the parents; for the marriage creates relations inconsistent with the subjection to the control of the parent. Parental rights must yield to the necessity of the new status of the child. (Citing 1 Bish., Marriage and Divorce, Sec. 275; Schouler Domestic Relations, Sec. 267.)"

Numerous other authorities could be cited to the same effect. It seems to be the generally accepted rule that marriage of a minor emancipates the minor child from parental control.

In the case of emancipation of a child, the Supreme Court of this State in Wallace v. Cox, 136 Tenn., 73, has stated the effect of emancipation of a minor in the following language:

"Emancipation of a child is the relinquishment by the parent of control and authority over the child, conferring on him the right to his earnings and terminating the parents legal duty to support the child."

We think it is clear that whatever obligation the divorced father owes to his minor children to supply them with the necessaries, that marriage of the minor terminates this legal obligation.

Her marriage, with or without the consent of the father, operated in law to emancipate her from rendering any service to her parents, or to be under their dominion or control, and likewise her marriage relieved the father of the obligation imposed by law to support his minor daughter. The responsibility and obligation became that of the daughter's husband, who, in turn, was solely entitled to her services.

The marriage of Loraine operated to effect complete filial emancipation, and the father, Mr. Going, was under no further legal obligation to support this minor married daughter. The agreement entered into between Mr. Going and Mrs. Birdie M. Going was for a valuable consideration, passing from Mr. Going to complainant, Mrs. Birdie M. Going. The Chancellor, in his finding of the facts, held that by a preponderance of the evidence it appeared that

Mrs. Birdie M. Going agreed to and did execute and sign the written release satisfying and discharging Mr. Going from the obligations of the alimony decree, upon the condition and for the consideration that Mr. Going would pay the tuition and the other items mentioned in the record for their daughter, Loraine. We concur in this finding of the facts as found by the Chancellor. We also concur in the statement contained in the finding of the facts by the Chancellor that Mrs. Birdie M. Going, having been unable to realize anything on the alimony judgment, regarded the judgment as of but little, if any, value, We also concur in the conclusion reached by the Chancellor in his finding of the facts that there was no fraud or coercion or intimidation employed by Mr. Going in procuring Mrs. Birdie M. Going to sign the release.

Some question is made by appellee that the minor daughter was living separate and apart from her husband at the time the release of the alimony judgment was signed by Mrs. Birdie M. Going, and that even though the marriage of this minor daughter operated as emancipation, that her separation from her husband would restore the status so as to make the father liable for this necessary expense.

We cannot agree to this contention. While the record discloses that about the time Mrs. Birdie M. Going signed the release in question, she had called at Mr. Going's law office to confer with him on the matter of having him assist their daughter, Loraine, in procuring a divorce, it does not appear that the divorce had been procured at the time the release was executed, and it does not appear that Loraine was at that time living separate and apart from her husband. As to whether it would alter her legal status, in the event there had been a separation and a divorce, is not necessary to be decided, since it does not appear from the record that this minor daughter had obtained a divorce from her husband or that she was living separate and apart from her husband at the time Mrs. Birdie M. Going signed the release.

We are constrained to hold that the learned Chancellor was in error in holding and decreeing that the release of the alimony judgment signed by Mrs. Birdie M. Going was not binding upon her and was without consideration. For the reasons above set forth, we are of the opinion that at the time Mrs. Birdie M. Going signed the release this minor daughter was married, and that her marriage was such emancipation as relieved the father of any legal obligation for her support, and that there was, therefore, sufficient consideration to support the agreement.

It results that the first assignment of error is sustained, and the cause is remanded to the chancery court of Shelby county to be further proceeded with, in accordance with this opinion. Appellee will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.