Bennett *v.* Smith.

BENNETT *vs.* SMITH and others,

```
21b    439
f 66 AD¹¹245
f 69 AD ⁶588

21b    439
82 AD²337
```

The marriage of a female, between fifteen and sixteen years of age, is valid in this state, although it takes place without the consent, and against the will, of her parents.

The common law rules remain unchanged, and are in full force here, with the exception that, by statute, the court is authorized, by a sentence of nullity, to declare void 'in certain cases, a marriage contracted while the female was under the age of fourteen. .

It is well settled that a husband may maintain an action for enticing away his wife, or inducing her to live apart from him; and this whether the wrongdoer be the father of the wife, or any other person.

But merely allowing the wife to come and remain in his house, by a stranger, and much less her father, from good motives, will not give to the husband a right of action. Something further, tending to prevent or dissuade the wife from living with her husband, is requisite.

In respect to what facts will support an action by a husband, for depriving him of his wife, there is, in principle, a clear distinction between the cases where the action is against a parent and those where it is against a stranger.

Where the conduct of a husband is such as to endanger the personal safety of his wife, or is so immoral and indecent as to render him grossly unfit for her society, so much so that she would be justified in abandoning him, *it seems,* her parents have the right not only to receive her into, and allow her the comforts of their house, but also to advise her to come and remain there; and the common law will not hold them responsible to the husband, in damages, for so doing.

And the same doctrine is applicable to a case where the advice is given by a parent, in the honest belief, justified by information received by him, that such

Bennett *v.* Smith.

circumstances exist, although the information may subsequently prove to have been unfounded. It is enough, for his protection, that he was warranted in such belief, and acted from pure motives.

It is therefore erroneous, in an action against the father of a married woman, for enticing her away, to charge that the defendant is liable if he advised the wife to stay away from her husband, without regard to his motives.

Where, in such an action, it appeared that the wife of the plaintiff was under sixteen years of age, and had been taken away, or left her father's house secretly, and was married without his consent or knowledge, and the defendant offered to prove that previous to, and at the time of the marriage, the husband was an habitual drunkard, and continued to be such down to the time of the trial; that his habits of drunkenness were known to the defendant, and constituted one ground of objection to his daughter living with the plaintiff; that he was in the habit of frequenting houses of ill-fame, and having illicit intercourse with abandoned women; that he was profane, vulgar and lascivious, and publicly boasted of his illicit intercourse with prostitutes, and of his frequenting houses of ill-fame; and that this was known to the defendant; and that the plaintiff had no pecuniary means or ability to support a family, was thriftless, idle and lazy, and followed no regular business; *Held,* that the matters proposed to be proved, if established, and the father was influenced by them, in advising the daughter to remain away from her husband while his habits of drunkenness and gross immorality and indecency continued, would have fully justified him in giving that advice, and so far as related to that act, constituted a complete defense to the action; and that the evidence offered was therefore improperly excluded.

*Held also,* that even if a cause of action were proved, the evidence so offered was admissible upon the question of damages.

In an action for enticing away the plaintiff's wife, the declarations of the wife, made within a few days after her marriage, expressing her wishes in respect to living with the plaintiff, as his wife, in connection with other circumstances tending to prove that she was not then under constraint, are admissible as part of the *res gestæ.*

APPEAL by the defendants, from a judgment rendered at a special term, after a trial at the circuit. The action was brought to recover damages against the defendants, for enticing away the plaintiff's wife; one of the defendants being the father of the wife.

*By the Court,* T. R. STRONG, J. The marriage in this case was valid, although the female was between fifteen and sixteen years of age, and the marriage was without the consent and against the will of her parents. By the common law, infants

may marry—males at the age of fourteen and females at twelve —and the consent of parents is not necessary to the validity of the marriage. (1 *Black. Com. by Chitty*, 348, 9, *marginal paging* 436, 7. 2 *Kent's Com.* 78, 9, *note b*, 85. *Bright's Hus. & Wife*, 4, § 17. *Parton* v. *Hervey*, 1 *Gray's Rep.* 119.) We have a statute in this state, authorizing the court, by a sentence of nullity, to declare void in certain cases, a marriage where the female was, at the time of the marriage, under the age of fourteen, (*Laws of* 1841, *chap.* 257,) but with that exception the rules of the common law above stated remain unchanged, and are in full force here.

The marriage being valid, the ordinary legal consequences of marriage followed—the husband and wife were one person, and he was entitled to her society and services. The authority of the parents over the daughter, and their right to her custody and services, were held subject to her right to contract marriage, and upon the marriage were suspended. This must be so on principle, as the continuance of the power and rights of the parents would be wholly inconsistent with that relation and the rights thereby acquired by the husband.

It is well settled that a husband may maintain an action for enticing away his wife, or inducing her to live apart from him; and in *Hutcheson* v. *Peck*, (5 *John*. 196,) the opinion was expressed by all the members of the court, that a suit by a husband against his wife's father for that cause, would lie. The ground of action in such a case is, that the husband has a right to the comfort and assistance of his wife, and that by procuring her to leave, or continue away from him, that right is violated and he sustains an injury. The wife owes to the husband the duty of living with him, and seeking to promote his interests and happiness, and by preventing the performance of that duty a wrong is done to him, involving a pecuniary loss as well as a loss of peace and comfort in the marriage relation. Whoever is the wrongdoer, whether the father of the wife, or any other person, he should be subject to an action for damages by the husband.

Merely allowing, however, the wife to come or remain in his house by a stranger, and much less her father, from good

motives, will not give to the husband a right of action. Motives
of humanity will protect a party from liability for such acts, al-
though done against the will and even the express prohibition
of the husband. (*Philips* v. *Squire, Peake's N. P. Cas.* 82.
*Schuneman* v. *Palmer,* 4 *Barb.* 225.) The exercise, by a
person, of ordinary hospitality, simply in permitting a mother-
in-law to reside in his family, although forbidden by the hus-
band, will not sustain an action. (*Turner* v. *Estes,* 3 *Mass.
R.* 317.) In such, and all similar cases, something further,
tending to prevent or dissuade the wife from living with her
husband, is requisite to a cause of action. But, as a general
rule, slight acts of that character will be sufficient.

In respect to what facts will support an action by a husband
for depriving him of his wife, there is, in principle, a clear dis-
tinction between the cases where the action is against a parent
of the wife, and where it is against a stranger. Parents are
under obligations, by the law of nature, to protect their children
from injury and relieve them when in distress; and their nat-
ural affection for their offspring dictates and prompts to such
protection. This is recognized by the common law, and is the
foundation of the rules which allow parents to do some things
in respect to and in behalf of their children which are not allow-
ed to be done by others, and which in some cases mitigate crimes
committed by parents to which they are excited by injuries to
their children. Blackstone says, on the subject of this duty of
protection, that it is a "natural duty, but rather permitted than
enjoined by any municipal laws; natural in this respect, work-
ing so strongly as to need rather a check than a spur. A pa-
rent may, by our laws, maintain and uphold his children in
their lawsuits, without being guilty of the legal crime of main-
taining quarrels. A parent may also justify an assault and
battery in defense of the persons of his children; nay, where a
man's son was beaten by another boy, and the father went near
a mile to find him, and there revenged his son's quarrel by beat-
ing the other boy, of which beating he afterwards unfortunately
died, it was held not to be murder, but manslaughter merely.
Such indulgence does the law show to the frailty of human na-

Bennett *v.* Smith.

ture, and the workings of parental affection." (1 *Bl. Com. by Chitty*, 371, *marginal paging* 454.) This duty of protection, in reason and justice, extends to wrongs done or threatened by a husband as well as by other persons, and the acts of parents are entitled to be regarded in the same spirit in such a case as in others. Where the conduct of a husband is such as to endanger the personal safety of his wife, or is so immora and indecent as to render him grossly unfit for her society, so much so that she would be justified in abandoning him, her parents ought to, and I have no doubt have, the right, not only to receive her into, and allow her the comforts of their house, which even a stranger may do in such a case, but also to advise her to come and remain there. No parent with ordinary parental feelings will, under such circumstances, hesitate to go so far for the relief of his children, and the common law will not, in my opinion, hold him responsible to the husband in damages for such conduct. And the same doctrine, in my judgment, is applicable to a case where the advice is given by a parent in the honest belief, justified by information received by him, that such circumstances exist, although the information may subsequently prove to have been unfounded. It is enough for his protection that he was warranted in such belief, and acted from pure motives. The opinions delivered by a majority of the court in the case of *Hutcheson* v. *Peck*, before cited, go very far in support of these views. That was an action by a husband against his wife's father, for enticing away the wife, and each of the five judges delivered an opinion at length. Kent, Ch. J., after alluding to the relationship between the defendant and the plaintiff's wife and briefly remarking upon the affection and obligation of parents to their children, says, " I should require, therefore, more proof to sustain the action against the father than against a stranger. It ought to appear either that he detains the wife against her will, or that he entices her away from her husband from improper motives. Bad or unworthy motives cannot be presumed. They ought to be positively shown, or necessarily deduced from the facts and circumstances detailed. This principle appears to me to preserve, in due dependence

upon each other, and to maintain in harmony, the equally strong and sacred interests of the parent and the husband. The *quo animo* ought then, in this case to have been made the test of inquiry and the rule of decision." The rule here stated by the learned jurist is in accordance with justice, and I think is the law.

In the present case, looking at the entire charge to the jury, the question as to a right of action was, at the trial, made to turn upon the question whether the defendants, after the wife was taken to the house of her parents, either by persuasion or force prevented her returning to her husband. The justice instructed the jury in substance, that the parents were justified in the exercise of their parental authority, in compelling the wife to go with them to their house, notwithstanding the declaration of the husband that they were married, and that the parental power over the wife continued until the parents, by the exercise of reasonable diligence, could ascertain in some other mode whether a marriage had in fact taken place ; and that the other persons acting in aid of, and by the authority of the parents, were, in respect to that part of the case, justified alike with the husband. This, upon the evidence, disposed of the case against the plaintiff as to all that part of it prior to the wife being brought back to her father's house. The justice further advised the jury, in substance, that if afterwards the defendants, either by persuasion or force, prevented her returning to her husband, they were liable, and in respect to the father, that if he persuaded the wife to stay away from her husband, such persuasion was an unlawful act ; that the law imputes an unlawful purpose to all persons doing an unlawful act ; that parents have no right to advise or persuade a daughter to separate from, or stay away from her husband ; and that if the father had done either, he was liable in this action, without reference to his motives or intentions. The same rule of liability was applied in deciding questions of evidence in the progress of the trial. The counsel for the defendants, in a series of offers, proposed to prove, that in the year 1851, and up to the time of the marriage, which was the 29th of August, 1852, the plaintiff was a habitual drunkard, and continued to be such up to the time of the trial ; that his

Bennett *v.* Smith.

habits of drunkenness were known to the defendants, and consti-
tuted one ground of objection to the daughter living with the
plaintiff; that he was in the habit up to the time of the trial
of frequenting houses of ill-fame, and having illicit intercourse
with abandoned women ; that he was, previous and subsequent
to the marriage, profane, vulgar and lascivious ; and publicly
boasted of his illicit intercourse with abandoned women, and of
his frequenting houses of ill-fame ; and that this was known to
the defendants : and that the plaintiff, prior to and at the time
of the marriage, had no pecuniary means or ability to support
a family, was thriftless, idle and lazy, and followed no regular
business.    These offers were severally overruled and the evi-
dence was rejected.

If the views I have already expressed are correct, the learned
justice erred in his instruction to the jury, that the father was
liable if he advised the wife to stay away from her husband
without regard to his motives ; and also in excluding the evi-
dence offered.  The matters proposed to be proved, if established,
and the father was influenced by them in advising the daughter
to remain away from her husband while his habits of drunken-
ness and gross immorality and indecency continued, would have
fully justified him in giving that advice, and so far as related to
that act, constituted a complete defense to him in the action.
The daughter was under sixteen—she had been taken away or
left her father's house secretly and married without his consent
or knowledge, and the plaintiff, her husband, if what was offered
to be proved in regard to his habits and conduct was true, was
entirely unworthy of, and unfit for, the society of a virtuous
woman ; and it was the right and duty of the father, in dis-
charging his obligation to protect her, to advise her to remain
with her parents, and under their care, while the unfitness of the
husband continued.   The law is not so unreasonable as to regard
mere advice in such a case, prompted by parental love, as a
wrong, entitling the husband to damages.   The fact that a hus-
band is without pecuniary means, will not warrant his wife in
leaving him, or her parents in advising her to do so.   As was ob-
served by the circuit judge at the trial in the case of *Hutcheson* v.

*Peck,* the poverty of the husband in such a case is rather an aggravation, for it is the duty of the wife to live with him and assist him in improving his affairs.

But if a cause of action was proved, I am satisfied that the evidence which was excluded was admissible upon the question of damages. It was offered upon that question as well as on the main issue. The rejection of this evidence assumed that a habitual drunkard, a frequenter of brothels, and so debased as to boast of illicit intercourse with prostitutes, was entitled to the same measure of damages for depriving him of his wife, as a man of good habits and fair character. No argument is necessary to refute such a position. The bare statement of it is sufficient. The injury complained of is analogous in character to an injury to a husband by criminal conversation with his wife. It consists, in each case, in alienating the wife's affections and destroying the comfort he had from her company. They differ in degree, but the rule of damages, in respect to each, as to the point under consideration, must be the same. In the action for criminal conversation, it is said in *Buller's N. P.* 26, 27, the damages are properly increased or diminished by the particular circumstances of each case, and among other circumstances are mentioned the rank and quality of the plaintiff, and that the plaintiff kept company with other women. *Phillips,* in his treatise on *Evidence,* (*vol.* 2, *p.* 213,) in giving the circumstances in extenuation, and to lessen the damages in an action for criminal conversation, says they will vary with every varying case, and he specifies, among others, the husband's profligate habits and his criminal connection with other women. See also, to the same effect, *Bromley* v. *Wallace,* (4 *Esp. N. P. Cas.* 257 ;) *Stephens N. P. C.* 8, 27 ; *Sanborn* v. *Nelson,* (4 *N. Hamp. Rep.* 501.) In *Foot* v. *Tracy,* (1 *John,* 51,) Kent, Ch. J., says, that in an action for criminal conversation, it is the practice to inquire into the moral character and behavior of the husband himself, who is a party to the record. So also the injury sustained by a breach of a promise to marry is of a similar nature to that in an action like the present, and a like rule in regard to the plaintiff's character and conduct being a proper subject of consideration on the

Bennett *v.* Smith.

question of damages, must prevail in each. In *Leeds* v. *Cook*, (4 *Esp. N. P. Cas.* 256,) which was an action for breach of promise of marriage, Lord Kenyon says, if the plaintiff appeared to be of gross manners and destitute of feeling; as he complained by his action of an injury in the loss of the society of a woman, which he appeared never to have valued, and the pleasures of which society he seemed little calculated to taste, the jury should take it into consideration. In *Willard* v. *Stone*, (7 *Cowen*, 22,) which was also an action for a breach of a promise to marry, improper conduct of the plaintiff after the breach, and after all intercourse between the parties had ceased, was adjudged admissible in mitigation of damages; and in *Palmer* v. *Andrews*, (7 *Wend.* 142,) which was for a like cause, the doctrine was stated and applied, that evidence of grossly indecent conduct of the plaintiff, either before or after the breach, was proper in mitigation. (*See also Boynton* v. *Kellogg*, (3 *Mass. Rep.* 189.) The books therefore fully accord with the dictates of reason and justice, and establish the principle, that the evidence in question was admissible to reduce the damages.

I am also of the opinion that the declarations of the wife within a few days after the marriage, expressing her wishes in relation to living with the plaintiff as his wife, should have been received. The main question in the case was, whether the defendants prevented the return of the wife to her husband during that period; and, in connection with other circumstances tending to prove that she was not then under constraint, her declarations were admissible as part of the *res gestæ*. (1 *Greenl. Ev.* § 102. 1 *Phil. Ev.* 231, 234. 2 *id.* 212. 1 *Steph. N. P.* 27. *Hadley* v. *Carter*, 8 *N. Hamp. R.* 40.)

My conclusion is, that a new trial should be granted, with costs to abide the event.

New trial granted.

[MONROE GENERAL TERM, March 3, 1856. *Johnson, T. R. Strong* and *Welles*, Justices.]