ANNA CUNNINGHAM, by ANNA PRELL, Her Guardian ad Litem, Appellant, *v.* WILLIAM CUNNINGHAM, Defendant.

Husband and wife — marriage contract — annulment — when marriage between residents of this state, performed in another state, will be annulled on the ground that one of the parties was under the age of legal consent.

1. Marriage contracts have always been considered as involving questions of public policy, and the interest of others than those of the contracting parties, and should,, therefore, be construed in accordance with such policy.

2. The right of a government, as well as that of the several states of the Union, to determine the marital status of its own citizens, and prescribe the terms and conditions upon which their relations may be changed, is elementary and beyond question.

3. A marriage ceremony, performed in violation of a statute, between parties, one of whom is under the age of legal consent, which has not been consummated by cohabitation, is not valid and binding upon the parties beyond the power of the courts to annul, but in a proper case they may relieve the infant party.

4. Where two persons, residents of this state, the woman being under the age of legal consent as fixed by statute in both states, went to New Jersey and were married, and the marriage was not followed by cohabitation, *held*, that the marriage of the woman without the knowledge or consent of her parents was repugnant to our public policy and legislation, and our courts have the power to relieve plaintiff by its annulment. (Dom. Rel. Law, Con. Laws, ch. 14, § 7; Code Civ. Pro. § 1743.)

*Cunningham* v. *Cunningham*, 145 App. Div. 919, reversed.

(Submitted June 17, 1912; decided October 22, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 19, 1911, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*August P. Wagener* for appellant. The cause of action coming within the statutes of the state of New York, plaintiff was entitled to the relief prayed for in the complaint. (*Stokes* v. *Stokes*, 198 N. Y. 301; Code Civ. Pro. § 1743; L. 1909, ch. 19, § 7.) The parties to this action, citizens of and domiciled in the state of New York, to evade the laws of this state, went to the state of New Jersey to have the marriage ceremony performed, plaintiff being an infant under the age of legal consent. The marriage entered into between them has never been consummated, and should be annulled. (*Mitchel* v. *Mitchel*, 63 Misc. Rep. 580; *Donohue* v. *Donohue*, 63 Misc. Rep. 111; *Earle* v. *Earle*, 141 App. Div. 611; *Cheely* v. *Clayton*, 110 U. S. 704; *Kinnier* v. *Kinnier*, 45 N. Y. 544; *Andrews* v. *Andrews*, 188 U. S. 14.)

Defendant not appearing.

HAIGHT, J. This action was brought to annul the marriage between the plaintiff and the defendant, which was alleged to have taken place on the 30th day of January, 1910, in the state of New Jersey. The plaintiff, whose maiden name was Anna Prell, is a daughter of Otto and Anna Prell, with whom she had lived all of her lifetime at No. 107 Seventh avenue, New York city. She, on the date of her marriage, was under the age of eighteen years. The defendant was about forty years of age and for about two years had been a boarder at the house of the plaintiff's parents. On the day of the marriage the defendant took the plaintiff to the city hall in the city of New York, where he asked for a license to marry her. After failing to obtain a license he took her to Westwood, New Jersey, where he procured a minister to perform the marriage ceremony, and then they returned to New York and to

her father's and mother's house, where they continued to reside the same as they had theretofore lived until Easter Sunday following such marriage. They did not, however, cohabit together or have sexual intercourse. On Easter Sunday the defendant appears to have returned home intoxicated and then announced to the plaintiff's parents that he was boss, that he had married their daughter, that she was his wife and that he proposed to have her; which was the first that the parents had heard of the marriage. A scene followed in which the police were called in, a complaint was made by the defendant of an assault by the plaintiff's mother, upon which she was arrested and taken before the Magistrate's Court, where, upon a hearing, she was discharged and the defendant was compelled to quit the house of the parents, where he had theretofore been a boarder. Subsequently this action was brought.

The plaintiff and the defendant were both residents of this state at the time of the marriage and have continued to be such residents ever since. Their only absence was during the time they took to go to New Jersey for the ceremony and return. Under the statute then in force in New Jersey, it was provided, in so far as is now material, "That no justice of the peace, minister of the gospel, or other person having, or pretending to have, authority to join persons together in the holy bonds of matrimony, shall marry any male under the age of twenty-one years, or female under the age of eighteen years, unless the parent or parents, guardian or guardians, or person or persons under whose care and government such minor or minors shall be, be present and give consent thereto," etc. (General Statutes of New Jersey, vol. 2, page 2005.) A revision of this statute appears to have been made in 1910, as appears from the Compiled Statutes of New Jersey (Vol. 3, page 3217), in which a license is now required to be procured before the marriage can be solemnized, which is similar to our statute in this

state upon the subject. But inasmuch as this revision did not take effect until July, 1910, it was not in force at the time of the marriage of the parties hereto, and, consequently, it may not now be considered.

It will be observed that the statute in force at that time, which was read in evidence upon the trial of this action, does not state whether the marriage of a person under the age specified by the statute shall be void or valid. Ordinarily a contract which is prohibited by statute is a void contract and unenforceable. But marriage contracts have always been considered as involving questions of public policy, and the interests of others than those of the contracting parties, and should, therefore, be con-strued in accordance with such policy. The legislatures, therefore, of most of our states have deemed it unwise to permit marriage contracts to be entered into between minors whose judgment and discretion were still immature. And yet where the contract has been made which has been followed by cohabitation, it has not been considered good policy to declare such marriage void, for it might be followed by the birth of children whose legitimacy might be affected thereby. It has, therefore, been held in several states that statutes prohibiting a marriage under an age specified, in the absence of an express declaration that it should be void, were directory merely and the contract not void but voidable. (See 26 Cyc. Law and Pro., and authorities there cited.) Such appears to be the construction placed upon the statute under consideration by the courts of New Jersey.

In the case of *Titsworth* v. *Titsworth* (78 N. J. Equity, 47) an action was brought by the husband to have the marriage set aside on the ground that he was under age at the time of the marriage. In that case the plaintiff had taken the defendant, to whom he had been paying attention, to a clergyman's house, in company with her brother and sister as witnesses, and there married her, he representing himself to be of the proper age. He then

returned with his wife to her mother's house and there
lived and cohabited with his wife for about a month.
Then he returned to his parents' home, and subsequently
brought the action. STEVENSON, V. C., says with refer-
ence thereto that "Under our statute, if there be issue,
the same will be legitimate, and I think the view is a cor-
rect one, that in a case like this a decree of nullity oper-
ates practically to render void at the time of its rendition
what up to that time was a valid but *voidable marriage*
and thus amounts to a decree of divorce *a vinculo.*" It
will be noted, however, that in that case cohabitation had
followed the marriage and there was a chance, therefore,
of the birth of a child. It was the policy of the state to
save such children from the taint of illegitimacy, and it
was by reason of such policy that the courts have held
that statutes prohibiting such contracts were directory
merely and that the contracts, therefore, were not void.
In cases, however, where there has been no cohabitation
and no chance for the subsequent birth of children, such
policy of the state no longer obtains. Then there are no
rights of issue to be guarded and protected, and it simply
becomes a question between the contracting parties. We
thus have the question presented in this case as to whether
a marriage ceremony performed by a minister, in vio-
lation of the statute, between parties, one of whom is
under the age of legal consent, which has not been con-
summated by cohabitation, is valid and forever binding
upon the parties and is beyond the power of the courts of
any state to annul or grant the parties relief.

It appears to me that the construction of the statute
given below defeats the purpose of the legislature in
establishing an age limitation and becomes exceedingly
burdensome upon minor children of immature years
whose consent to the ceremony may have been obtained
without their knowing or comprehending its full mean-
ing and import. No public policy calls for such a con-
struction, and to my mind the legislative intent was to

make such marriages voidable, so that the courts in a proper case may relieve the infant party.

But assuming that under the statutes of New Jersey the marriage was valid, and not voidable, it then becomes necessary to determine the extent of the jurisdiction of our courts in the matter. Our Domestic Relations Law, section 7 (Laws of 1909, chapter 19; Birdseye's Consolidated Laws, chap. 14, vol. 1, page 1021) provides as follows: "A marriage is void from the time its nullity is declared by a court of competent jurisdiction if either party thereto :

"1. *Is under the age of legal consent, which is eighteen years ;*

"2. Is incapable of consenting to a marriage for want of understanding ;

"3. Is incapable of entering into the married state from physical cause ;

"4. Consents to such marriage by reason of force, duress or fraud ;

"5. Has a husband or a wife by a former marriage living, and such former husband or wife has absented himself or herself for five successive years then last past without being known to such party to be living during that time."

Section 1743 of the Code of Civil Procedure provides: "An action may also be maintained to procure a judgment, declaring a marriage contract void and annulling the marriage, for either of the following causes, existing at the time of the marriage :

"1. That one or both of the parties had not attained the age of legal consent.

"2. That the former husband or wife of one of the parties was living, and that the marriage with the former husband or wife was then in force.

"3. That one of the parties was an idiot or lunatic.

"4. That the consent of one of the parties was obtained by force, duress, or fraud.

" 5. That one of the parties was physically incapable of entering into the marriage state."

Section 1744 of the Code provides that " An action to annul a marriage, on the ground that one of the parties had not attained the age of legal consent, may be maintained by the infant, or by either parent of the infant, or by the guardian of the infant's person," etc.

It will be recalled that the parties to this action reside in this state and have so resided ever since and before the marriage. The right of a government, as well as that ·of the several states of the Union, to determine the marital status of its own citizens and prescribe the terms and conditions upon which their relations may be changed is elementary and beyond question.

In the case of *Kinnier* v. *Kinnier* (45 N. Y. 535, 544) CHURCH, Ch. J., in delivering the opinion of the court, says: " It is now well settled that the *lex loci* which is to govern married persons, and by which the contract is to be annulled, is not the law of the place where the contract was made, but where it exists for the time, where the parties have their domicile, and where they are amenable for any violation of their duties in that relation. (Story's Conflict of Laws, section 230a.) "

In the case of *Maynard* v. *Hill* (125 U. S. 190) the action was brought to charge certain lands, as held by the defendants as trustees for the benefit of the plaintiffs. The lands were owned by David S. Maynard in his lifetime. He was married in the state of Vermont and went to California, under a promise to his wife that he would return but never did so. Subsequently he removed to the territory of Oregon, formed other relations, and then procured the legislature of the territory to pass an act dissolving his marriage with his former wife. This was held to be within the power of the legislature, in view of the fact that he was a resident of the territory and its legislature had the power to determine his status. It would thus seem to follow that if the legislature could

by act annul a marriage without cause, it might provide for the dissolving of marriages, through the courts, of its own citizens, even though the marriage had taken place in a sister state, where such marriages were unauthorized by such state and were against the public policy of the state of their residence.

In *Livingston* v. *Livingston* (173 N. Y. 377, 389) O'BRIEN, J., says: "A marriage contract may be dissolved *by a direct* or *special act of the legislature,* and such a law does not impair the obligation of a contract. Marriage is something more than a mere contract. It is a status or institution of society founded upon the consent of the parties and *the subject of regulation by law.*"

In *Wade* v. *Kalbfleisch* (58 N. Y. 282, 284) CHURCH, Ch. J., in speaking of the marriage contract, remarks: "It cannot be dissolved by the parties *when consummated,* nor released with or without consideration. *The relation is always regulated by government.* It is more than a contract. It requires certain acts of the parties to constitute marriage, independent of and beyond the contract. It partakes more of the character of an institution regulated and controlled by public authority, *upon principles of public policy,* for the benefit of the community." (See, also, *Hawkins* v. *Hawkins,* 193 N. Y. 409–418, in which CULLEN, Ch. J., discusses the same question. Also *Hunt* v. *Hunt,* 131 U. S. Appendix, 165; *Haddock* v. *Haddock,* 201 U. S. 562–569.)

It must be borne in mind that I have been discussing the question of the powers of the courts of our state to determine the status of our own citizens. I do not question the validity of marriage contracts made in other states conformatory to the laws of such state, or that they will be recognized as valid in this state, unless they are contrary to the prohibition of natural laws, or to the express provisions of our statute. We would not in this state recognize a contract of marriage in another state in several instances, such as between a father and a daughter,

or where the consent was procured through force, duress or fraud, etc. We do recognize the remarriage of a former husband or wife who has been divorced and has been forbidden to again marry, where such remarriage took place in a state in which it was authorized. But this is upon the ground that the forbidding to remarry was in the nature of a penalty which had no effect outside of this state.

My conclusions are that the marriage of the plaintiff to the defendant in the state of New Jersey, while she was under the age of legal consent, without the knowledge or consent of her parents, was repugnant to our public policy and legislation, and in view of the fact that the parties were, and ever since have been, residents of this state, our courts have the power to relieve the plaintiff by annulling the marriage.

The judgment of the Appellate Division and that of the Special Term should be reversed and a new trial ordered, without costs.

WERNER, J. (dissenting). The action was brought to procure the annulment of a marriage solemnized in New Jersey between the parties who were and are residents of this state. The ground upon which this annulment is sought is that, at the time of the marriage, the plaintiff was under the age of eighteen which, by our statute, is fixed as the age of legal consent. (Domestic Relations Law, sec. 7, subd. 1.) Although the defendant neither appeared nor answered in the action the learned court at Special Term held that the plaintiff was not entitled to the relief for which she prays, and at the Appellate Division there was a unanimous concurrence in that view. The case presents two questions: 1. Was the marriage valid in the state of New Jersey where it was solemnized? 2. If it was valid there, can it be held invalid here?

Upon the question whether this marriage was valid in New Jersey, the plaintiff made proof of but one

statute of that state, and our own research has disclosed no other. By that statute all persons authorized to join persons in the bonds of matrimony are forbidden to perform the ceremony in any case where the male is under the age of twenty-one or the female is under the age of eighteen, " unless the parent or parents, guardian or guardians, or person or persons under whose care and government such minor or minors shall be, be present and give consent thereto, or unless the minor applying to be married, whether male or female, shall have produced a certificate of consent, in writing, under the hand of the parent or parents, guardian or guardians, or if such minor, so applying to be married, have no parent or guardian, then under the hand of the person or persons under whose care and government he or she may at that time be." The statute proceeds to provide in detail for the authentication of such certificate, and for the manner in which the functionary who is called upon to perform a marriage ceremony may protect himself against the penalty of the statute in a case where no certificate is presented and he shall suspect that there is misrepresentation or fraud in respect of the age of any person applying to be married.

This statute, it will be noted, does not invalidate marriages between minors, and it does not even declare them to be voidable. It is simply a law of regulation which imposes upon those who are authorized to perform the marriage ceremony the duty of observing the specified statutory details to the end that the evils of premature and ill-considered marriages between persons of immature years and undeveloped characters may be minimized as much as possible. Human experience has long since demonstrated that such marriages cannot be entirely prevented and that to invalidate them *ipso facto* would be to create two evils where but one existed before. The New Jersey legislature, recognizing this obvious truth, has sought to render the statute effective by imposing a pen-

alty upon those who officiate at such marriages in defiance or neglect of its mandates. There the law significantly stops and leaves the parties to the marriage where they have placed themselves. This is the view which the courts of New Jersey seem to have taken of this statute. In *Wyckoff* v. *Boggs* (7 N. J. L. 139) the action was against a clergyman to recover the specified penalty, and the case on appeal turned upon the admissibility of evidence to establish the consent of the parents of one of the parties to the marriage. There the court assumed without discussion that the marriage was valid and that the only question was whether the defendant was liable to the penalty. A similar position was taken in an action for dower where the right to recover depended upon the validity of the marriage of the claimant. (*Pearson* v. *Howey,* 11 N. J. L. 13.) And in Massachusetts, under a precisely similar statute, the Supreme Judicial Court upheld the validity of a marriage between minors without the consent of parents or guardians. (*Partin* v. *Hervey*, 1 Gray [Mass.], 119.) Other states with such statutes have followed the same rule. (*Hunter* v. *Milam*, [Cal. 1895] 41 Pac. Rep. 332; *Fitzpatrick* v. *Fitzpatrick*, 6 Nev. 63; *Warwick* v. *Cooper*, 37 Tenn. 659; *Governor* v. *Rector*, 29 Tenn. 57; *Pool* v. *Pratt*, 1 D. Chip. [Vt.] 252.) Quite apart from the authorities, however, it is almost an axiom of the law that unless such a marriage is expressly condemned as void if contracted without the prescribed consent, the statute is to be construed as entirely directory in this respect and the marriage will be valid even though the law may entail penalties upon the officiating authorities who fail to comply with its commands. It is perfectly plain, therefore, that neither in the statute nor the decisions of New Jersey can the plaintiff find support for the action which she seeks to maintain in our courts; and if we were at liberty to look to the common law the result would be the same, for under that the age of consent is fourteen in males and twelve in

females. (*Bennett* v. *Smith*, 21 Barb. 439, 441; *Partin* v. *Hervey*, 1 Gray, 119; 1 Chitty's Blackstone and Kent's Com.)

The learned counsel for the appellant, evidently recognizing the perplexity of his position, now invokes the statutes of this state to support his suit. The argument is that marriage is something more than a mere contract; that it establishes a *status* which is subject to the law of the domicile; that each state has the inherent right to make its own laws for the regulation of marriage and divorce; and that under our law, which fixes the age of legal consent at eighteen (Domestic Relations Law, sec. 7, subd. 1), the right is expressly given to maintain an action to annul a marriage when either of the parties thereto is under that age. (Code Civ. Pro. sections 1743, 1744.) This argument ignores the fundamental distinction between the contract and the *status*. The initial validity of a marriage is one thing, and the right to dissolve it for causes arising after it has been established is quite another thing. It has long been definitely settled in our courts that the validity of a marriage is to be determined by the law of the state where it was entered into. If valid there, it is to be recognized as such in the courts of this state, unless contrary to the prohibition of the natural law, or the express prohibitions of a statute. Although every state can regulate the *status* of its own citizens, yet in the absence of express words we cannot infer a legislative intent to contravene the *jus gentium* under which the validity of a marriage contract is referred to the *lex loci contractus*. Such an intent cannot be attributed to the legislature unless it is clearly and unmistakably expressed in the statute. (*Van Voorhis* v. *Brintnall*, 86 N. Y. 18.) And this is true, even when parties domiciled here visit other jurisdictions for the sole purpose of contracting marriages forbidden by our own statutes. (*Thorp* v. *Thorp*, 90 N. Y. 602; *Moore* v. *Hegeman*, 92 N. Y. 521.)

The rule that the validity of a marriage contract is generally to be determined by the law of the place where made is not inconsistent with the other rule that every civilized state must have the right to make and enforce laws regulating a relation of such importance as the marriage *status*. Conflicting laws upon the subject have produced a confusing diversity of judicial decisions, but there are a few fundamental and immutable principles which are guide posts to correct results. Marriage is primarily a contract. In its constitution it is purely personal and consensual. Considered merely as a contract it is valid everywhere if entered into according to the *lex loci*. The reason for this rule is clearly stated by Mr. Justice STORY in his "Conflict of Laws" (Sec. 121, 7th ed.), where he quotes from the opinion of Sir EDWARD SIMPSON in the historic case of *Scrimshire* v. *Scrimshire* (2 Hagg. Const. 395): "All civilized nations allow marriage contracts. They are *juris gentium;* and the subjects of all nations are equally concerned in them. Infinite mischief and confusion must necessarily arise to the subjects of all nations with respect to legitimacy, successions, and other rights, if the respective laws of different countries were only to be observed, as to marriages contracted by the subjects of those countries abroad; and therefore all nations have consented, or are presumed to consent, for the common benefit and advantage, that such marriages shall be good or not, according to the laws of the country where they are celebrated. By observing this rule, few, if any, inconveniences can arise. By disregarding it, infinite mischiefs must ensue."

But marriage, although initiated by contract, creates a *status* with manifold continuing rights, duties and obligations which follow the parties wherever they may go and which cannot be left to their discretion or caprice. These continuing rights, duties and obligations must necessarily be subject to the law of the domicile, for otherwise the state would have no control over its sub-

23

jects or citizens. This is the *status* which the *lex domicilii* assumes to regulate and nothing more. When we thus differentiate the contract and the *status* we see that what appears to be a conflict of law and jurisdiction is in reality nothing more than a rational and practical adjustment of the law to separate and distinct conditions. The contract itself, that is, the formality by which the marriage is constituted, is governed by the law of the place where it is entered into. If valid there it is valid everywhere. The *status*, which is the relation of the parties to the state, is governed by the law of the place of residence, without regard to the law of the place where the contract was made. Bishop has very happily expressed this distinction. "Marriage," he says, "as to its constitution, is governed by the *lex loci contractus;* as to its dissolution by divorce by the *lex domicilii.*"

If this reasoning is sound there will be no difficulty in assigning to their proper sphere and function the statutes of this state and the authorities cited by our brother HAIGHT in his opinion for reversal. Our Domestic Relations Law, and the sections of the Code of Civil Procedure relating to annulment of marriages, are purely local statutes which can have no extra-territorial effect. They were not intended to invalidate marriages contracted in other states or countries and which were valid where made. These statutes, in so far as they relate to the annulment of marriages, were designed to apply only to void and voidable marriages contracted within this state; to such as are universally repugnant to the laws of all civilized countries; and to such as are void or voidable where made, for the same reasons that render them subject to annulment here.

The authorities referred to by Judge HAIGHT are not in conflict with the foregoing views; on the contrary, they simply emphasize the difference between the marital *status* and the marriage contract. His quotations from *Kinnier* v. *Kinnier* (45 N. Y. 535); *Wade* v. *Kalb-*

*fleisch* (58 N. Y. 282) and other decisions of this court in matrimonial actions, establish beyond controversy the power of the *lex domicilii* over the marriage relation, which extends even to the point of enacting special statutes dissolving particular marriages without cause, as is illustrated in the case of *Maynard* v. *Hill* (125 U. S. 190). That is not the power, however, with which we are concerned in the case at bar. The question here is whether it is competent for our courts to invalidate a marriage contract, valid under the laws of the sister state where it was made, upon the sole ground that a similar contract entered into in this state is by our laws made voidable. That question has been correctly decided by the courts below in the dismissal of the plaintiff's complaint, and I think this judgment can be reversed only by judicial legislation.

I vote for affirmance.

CULLEN, Ch. J., VANN, WILLARD BARTLETT and CHASE, JJ., concur with HAIGHT, J.; WERNER, J., reads dissenting opinion; GRAY, J., absent.

Judgments reversed, etc.