SUSANNA CIRENE SIMMONS, by WENTWORTH B. ARCHIBALD, Her Guardian ad Litem, Appellant, *v.* NORBERT SYDNEY SIMMONS, Respondent.

First Department, February 21, 1924.

Husband and wife — annulment of marriage — parties, residents and subjects of foreign country, contracted valid marriage there — later parties became residents of this State — plaintiff is under age of legal consent provided by Domestic Relations Law, § 7, subd. 1 — courts of this State do not have jurisdiction to annul marriage.

The courts of this State have no jurisdiction to annul a marriage contracted in a foreign country between two actual *bona fide* residents and citizens or subjects of such country, which marriage was by the laws of such country valid when it was contracted.

Accordingly, a marriage validly contracted between two *bona fide* residents and subjects of the British West Indies, who lived there together as husband and wife for more than a year and then became residents of this State, will not be annulled in an action in this State by the wife who at the time of the trial is still under the age of legal consent provided by subdivision 1 of section 7 of the Domestic Relations Law.

The effect of section 1146-a of Civil Practice Act was not considered by court.

APPEAL by the plaintiff, Susanna Cirene Simmons, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 23d day of February, 1923, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the complaint in an undefended action for an annulment of marriage.

*Jacob Kirschenbaum,* for the appellant.

. No appearance for the respondent.

DOWLING, J.:

The plaintiff is the illegitimate daughter of Wentworth B. Archibald by one Eliza Newton. She was born on the island of St. Kitts, British West Indies, on September 23, 1905, after her father had left the island. On December 9, 1919, when she was fourteen years and two months old, she was married to the defendant at St. John's Church, Seventh Day Adventist church on the island of Antigua, British West Indies. In the register of marriage her age is given as fifteen, that of her husband as twenty-seven, and banns having been published, the consent to plaintiff's marriage was given by her mother. Her father was then in New York. Plaintiff and defendant lived together for a year and a half and then were separated for nine months. In January, 1922, plaintiff came to New York city and went to live with her father. Defendant came to New York city in June, 1921, and sent for

plaintiff, who joined him in her father's house, where defendant was then living. He testified that they lived together as man and wife for two days after her arrival, when plaintiff told him that she did not want him any more, and he swore that as long as plaintiff wanted the marriage annulled and said she did not love him any more, he had no objection to it. He also testified that plaintiff's mother gave her consent to the plaintiff's marriage to him, and not the father, who says he was told of the proposed marriage and sharply opposed it.

This action for an annulment was commenced on August 29, 1922, and was not defended. At the time of the trial, plaintiff was still but seventeen years and two months old.

The learned justice at Special Term dismissed the complaint upon the ground that the court was without jurisdiction to entertain the action, for the reason that the parties were non-residents of the State of New York when the marriage was contracted, and that there was no evidence to show that the marriage was invalid under the laws of the British West Indies where it was performed. From the judgment entered on that decision plaintiff now appeals.

Upon the present appeal counsel for the plaintiff concedes the validity of the marriage between the parties. As he says in his brief: " Counsel respectfully lays stress upon the proposition that no contention is made that the marriage contract was invalid either in the British West Indies or in New York. It is conceded that the validity of a marriage is to be determined by the law of the place where it was solemnized. But no attack is intended upon the marriage contract. Counsel concedes its validity.

" The plaintiff resorts solely to the provisions of the Domestic Relations Law, subdivision 1, of section 7."

We have, therefore, a case of a marriage validly contracted between two residents and subjects of the British West Indies, who lived there together as husband and wife for more than a year. With their marital status thus determined, they both became residents of the State of New York. Can the courts of that State decree the annulment of their marriage, not because of anything occurring since the marriage, but because such a marriage performed here is voidable under the laws of this State by reason of the tender age of the wife?

That provision is as follows:

" § 7. Voidable marriages. A marriage is void from the time its nullity is declared by a court of competent jurisdiction if either party thereto:

" 1. Is under the age of legal consent, which is eighteen years, provided that such nonage shall not of itself constitute an absolute

right to the annulment of such marriage, but such annulment shall be in the discretion of the court which shall take into consideration all the facts and circumstances surrounding such marriage." The proviso was added by chapter 313 of the Laws of 1922.

The last sentence of said section 7 is as follows: " Actions to annul a void or voidable marriage may be brought only as provided in the Code of Civil Procedure."

The provision of the Civil Practice Act applicable to actions for annulment where the party is under the age of consent is to be found in section 1133, as follows: " An action to annul a marriage on the ground that one or both of the parties had not attained the age of legal consent may be maintained by the infant, or by either parent of the infant, or by the guardian of the infant's person; or the court may allow the action to be maintained by any person as the next friend of the infant. But a marriage shall not be annulled at the suit of a party who was of the age of legal consent when it was contracted, or by a party who for any time after he or she attained that age freely cohabited with the other party as husband or wife." This provision superseded section 1744 of the Code of Civil Procedure (as amd. by Laws of 1919, chap. 144).

It is to be noted that under the amendment made to section 7, subdivision 1, of the Domestic Relations Law by chapter 313 of the Laws of 1922, which took effect September 1, 1922, the right to decree annulment for non-age is purely discretionary; but the justice at Special Term did not refuse relief in the exercise of discretion, but solely as a matter of law, and we are, therefore, called upon to determine whether he was right in holding that the court was without jurisdiction in the premises.

The general proposition as to annulment actions is thus stated in 26 Cyc. 900: " A suit for the annulment of a marriage, unlike a suit for divorce, must be founded on some cause which existed at the time of the marriage, not a supervening cause * * *."

What is the alleged cause assigned for this annulment? That two persons, residents of a foreign jurisdiction, contracted a marriage perfectly valid there; but because they choose to enter this jurisdiction a couple of years afterwards, and become residents of this State they can apply to our courts to decree the invalidity of that marriage, pursuant to a law of this State forbidding such marriages by rendering them voidable, although they could not question its validity in the jurisdiction where they were married, and of which they were *bona fide* residents, without even a thought of ever coming to this State.

I do not believe that the laws of this State have any such extraterritorial force, nor that they can reach out beyond its bor-

ders, and extend back to render void an act performed four years ago and lawful when and where it was performed.

Section 5 of the Domestic Relations Law defines what are incestuous marriages, declares them to be void, and provides a punishment for the person knowingly and willfully solemnizing such a marriage. It surely could not be claimed that this penalty could be imposed on one who performed such a marriage outside the State, because the parties thereto happened to come into this State and apply to our courts for relief, where the courts of their State of origin would not grant it.

I am of the opinion that the section under consideration applies only to marriages contracted in this State (save where its residents contracted a marriage elsewhere by fraud) and does not apply to those validly contracted in foreign jurisdictions, whereof the parties at the time were *bona fide* residents. To hold otherwise would invite resort to our courts by many hastily and improvidently married at any early age, who had contracted lawful marriages in their home States, which they were unable there to have annulled.

In the leading case of *Scrimshire* v. *Scrimshire* (2 Hagg. Cons. 412) Sir EDWIN SIMPSON said: " This doctrine of trying contracts, especially those of marriage, according to the laws of the country where they were made, is conformable to what is laid down in our books, and what is practised in all civilized countries, and what is agreeable to the law of nations, which is the law of every particular country, and taken notice of as such."

So as Judge Story says in his Commentaries on " The Conflict of Laws " (8th ed. p. 114): " In the American courts, the doctrine as to capacity or incapacity to marry has been held to depend generally on the laws of the place where the marriage is celebrated, and not on that of the place of domicile of the parties. An exception would doubtless be applied to cases of incest and polygamy."

It will be noted that these exceptions are cases where the marriage is void, and not voidable. (See Dom. Rel. Law, § 5; Id. § 6, as amd. by Laws of 1915, chap. 266, and Laws of 1922, chap. 279.) And again the same author says (at p. 313): " Upon the whole the doctrine now established in America upon the subject of divorce is that the law of the place of actual *bona fide* domicile of the parties gives jurisdiction to the proper courts to decree a divorce for any cause allowed by the local law, without any reference to the law of the place of the original marriage, or the place where the offense for which the divorce is allowed was committed." It will be observed that this refers to a *divorce* and to an offense occurring after the original marriage, not to an annulment.

The learned counsel for appellant, in his interesting brief, has cited certain New York cases as supporting his contention.

In *Kinnier* v. *Kinnier* (45 N. Y. 535) the court said: " It is now well settled that the *lex loci* which is to govern married persons and by which the contract is to be annulled, is not the law of the place where the contract was made, but where it exists for the time, where the parties have their domicile, and where they are amenable for any violation of their duties in that relation."

But that was a case where the marriage sought to be annulled was solemnized in this State, and the question involved was the jurisdiction of the State of Illinois to render a decree of divorce, which was claimed to have been obtained by fraud and collusion, to which the defendant in the suit here was a party. The word " annulled " in the sentence quoted refers to a decree of divorce and not to an annulment action. And it will be noted that it refers to " any violation of their duties " by the parties, which clearly has to do with subsequent acts, and not to the original marriage.

Appellant cites *Livingston* v. *Livingston* (173 N. Y. 389) wherein it was said: " A marriage contract may be dissolved by a direct or special act of the Legislature, and such a law does not impair the obligation of a contract. Marriage is something more than a mere contract. It is a *status* or institution of society, founded upon the consent of the parties and the subject of regulation by law. It is not embraced within the terms or meaning of the Constitution* which forbids the States from enacting laws impairing the obligation of contracts." But this quotation is taken from the dissenting opinion of Judge O'BRIEN, and the question involved was the right of the court to reduce the amount of alimony ordered to be paid by defendant in a judgment of divorce.

*Cunningham* v. *Cunningham* (206 N. Y. 341) was an action brought to annul a marriage contracted in the State of New Jersey between two legal residents of the State of New York, who went to New Jersey to be married when they could not obtain a marriage license in this State, and who returned to this State as soon as they were married, and never cohabited as husband and wife. The wife was under age, under the laws of the State of New Jersey. But the decision turned upon the point that the parties were actually residents of this State when they were married, for the court said in closing its opinion (at p. 349): " My conclusions are that the marriage of the plaintiff to the defendant in the State of New Jersey, while she was under the age of legal consent, with-

---

* See U. S. Const. art. 1, § 10, subd. 1.— [REP.

out the knowledge or consent of her parents, was repugnant to our public policy and legislation, and in view of the fact that the parties were, and ever since have been, residents of this State, our courts have the power to relieve the plaintiff by annulling the marriage."

And again (at p. 347): " It will be recalled that the parties to this action reside in this State and have so resided ever since and before the marriage. The right of a government, as well as that of the several States of the Union, to determine the marital status of its own citizens and prescribe the terms and conditions upon which their relations may be changed is elementary and beyond question." (Citing *Kinnier* v. *Kinnier, supra,* and Story's Conflict of Laws, § 230-a, which as has been shown have to do with divorce and not with annulment.)

*Mitchell* v. *Mitchell* (63 Misc. Rep. 580) was a case like the *Cunningham* case. There two residents of Buffalo, in the State of New York, crossed the Niagara river and were married by a minister at Fort Erie, in the Dominion of Canada. Plaintiff, who was under eighteen years of age, represented herself to the minister as over eighteen. They at once returned to Buffalo and lived together two months. The marriage was without the consent of the wife's mother. Here again the decision of the court was based on the fact that both the parties to the marriage were residents of the State of New York when the marriage was contracted outside the State.

*Cheely* v. *Clayton* (110 U. S. 701) holds no more than that " The courts of the State of the domicile of the parties doubtless have jurisdiction to decree a divorce in accordance with its laws for any cause allowed by those laws, without regard to the place of the marriage, or to that of the commission of the offense for which the divorce is granted."

This also was a question of a decree of divorce and the validity of service by publication.

In *Maynard* v. *Hill* (125 U. S. 190) the question involved was the validity of a decree of divorce granted by the Legislature of the Territory of Oregon.

If it be contended that the Domestic Relations Law expresses the legislative policy of the State that the marital relations shall not be allowed to continue where one of the parties is under the age of consent, the answer is, *first,* that such marriages are not made void, but only voidable, their annulment depending on the discretion of the court, and, therefore, they do not come within the absolutely prohibited class, as in incest; and *second,* that there is no provision made for the termination of the relationship on the

suit of the minor, but only a provision for annulment, which decrees the marriage void *ab initio;* all of which confirms the belief that the law was intended to affect only marriages contracted in this State, and not those contracted elsewhere between *bona fide* residents.

My conclusion is, that while the courts of the State of New York have jurisdiction to annul a marriage fraudulently entered into by two of its own citizens in another State or country, and while the State has undoubted power to determine the offenses for which a decree of divorce may be granted to one of its own citizens, thus terminating a marriage contracted elsewhere, its courts have no power to annul and declare invalid *ab initio* a marriage contracted in another State or country between two actual *bona·fide* residents, and citizens or subjects, of such State or country, when the marriage was by the laws of such State or country valid when and where it was performed.

In the foregoing opinion the effect to be given to section 1146-a of the Civil Practice Act (as added by Laws of 1923, chap. 372), which took effect May 21, 1923, has not been considered, as plaintiff did not rely thereon, the action having been commenced before said section took effect, nor did the proofs bring the case within the provisions of subdivision 3 thereof.

The judgment appealed from should, therefore, be affirmed.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Judgment affirmed.