HERBERT W. CRUICKSHANK, as Father of ROBERT G. CRUICK-
SHANK, an Infant, Plaintiff, *v.* JOSEPHINE M. CRUICKSHANK
et al., Defendants.

Supreme Court, Trial Term, Monroe County, September 16, 1948.

*Chamberlain, Page & D'Amanda* for plaintiff.

*Traynor, McNamara & Skehan* for Josephine M. Cruickshank,
defendant.

CRIBB, J. This is an action for annulment of a California marriage. Robert Garden Cruickshank, a resident of the city of Rochester, county of Monroe and State of New York, while stationed at Treasure Island, California, married Josephine Maderos Schwartz, a divorcee and a resident of the State of California, on October 18, 1946, in San Francisco, California, without the knowledge or consent of his parents. He was then nineteen years of age, having been born on March 21, 1927, but as shown by the certificate of marriage, he stated that his age was twenty-two. The first notice the parents received of the marriage was on or about November 1, 1946.

Robert Garden Cruickshank and Josephine M. Cruickshank lived as man and wife in California until on or about November 30, 1946, when they left California by airplane. Because of inclement weather it was advisable to interrupt the flight back to Rochester by a stopover of sixteen hours at Amarillo, Texas. There Robert and Josephine registered as man and wife in a hotel in which the rest of the party also registered for the night. After this sixteen-hour stay in Texas the plane took off and arrived in Rochester on or about December 1, 1946. Robert and Josephine lived together as man and wife in the State of New York until September 5, 1947, living most of this time in Ithaca, New York, where Robert was attending school. There is no issue of the marriage, and Josephine M. Cruickshank is not pregnant.

This action for annulment of the marriage was begun on September 12, 1947, by Herbert W. Cruickshank as father of Robert Garden Cruickshank. Robert at that date was twenty years of age.

The defendant, Josephine M. Cruickshank, interposed an answer. Robert Garden Cruickshank, who was made a party defendant subsequent to the commencement of the action after motion made by counsel for Josephine asking that he be made a party plaintiff or party defendant, interposed no answer.

By an order of the court at Special Term it was directed that the following questions of fact be submitted to the jury:

(1) Was Robert Garden Cruickshank an infant under the age of twenty-one years at the time of the commencement of this action?

(2) Did the said Robert Garden Cruickshank, while an infant of the age of nineteen years, enter into a ceremonial marriage with the defendant, Josephine M. Cruickshank, in the city of San Francisco, California?

(3) Was the marriage entered into between Robert Garden Cruickshank and Josephine M. Cruickshank performed without the written consent of Herbert W. Cruickshank, the plaintiff, the father of said Robert Garden Cruickshank?

(4) Was the marriage entered into between Robert Garden Cruickshank and Josephine M. Cruickshank, performed without the written consent of Kathleen Cruickshank, the mother of Robert Garden Cruickshank?

(5) On or about November 30, 1946, in the city of Amarillo, county of Potter and State of Texas, did the defendants Josephine M. Cruickshank and Robert Garden Cruickshank enter into a common-law marriage under the common law of the State of Texas, and thereafter continue to cohabit and hold themselves out as husband and wife by virtue of such common-law marriage?

However, that court stated: '' Whether there is any evidence to go to the jury respecting any of these questions will, of course, be passed upon by the trial court.''

Upon the trial this court found that there was no dispute as to the issues of fact raised by the questions numbered '' 1 '' through '' 4 '', and that question numbered '' 5 '' was a question of law to be determined by the court. Accordingly, this court instructed the jury to answer questions numbered '' 1 '', '' 2 '', '' 3 '' and '' 4 '' in the affirmative, and reserved decision on question numbered '' 5 ''. After the jury was dismissed, the plaintiff moved for judgment upon the merits granting an annulment of the marriage as demanded in the complaint, and counsel for defendant, Josephine M. Cruickshank, moved for judgment dismissing the complaint. Decision was reserved upon both motions.

The answer interposed by the defendant wife is substantially a general denial of most of the allegations of the complaint followed by an affirmative defense alleging that because of a sixteen-hour stopover at Amarillo, Texas, which was made necessary because of adverse weather flying conditions, where the defendants, Robert and Josephine, registered at a hotel and occupied a room as man and wife, a common-law marriage thereby resulted. Upon this theory it is contended that Robert and Josephine established the marital relationship without regard to the ceremonial marriage theretofore performed in California. I find this defense to be without merit. Robert and Josephine, some weeks after their ceremonial marriage in California, left that State as guests of the owner of a private plane bound for Rochester, New York. They were accom-

panied by the owner of the plane which was operated by the pilot employed by him. There were two other guests of the owner on board the plane. Robert and Josephine had no control over the course the plane took or stops made. The owner testified that it had been his intention to fly directly to Rochester without any overnight stops but that due to heavy winds his pilot advised stopping over night in Texas and the stop was made accordingly.

The question as to whether a common-law marriage resulted from the acts of Robert and Josephine on the occasion of the overnight stop in Texas must be determined under the laws of Texas where common-law marriages are recognized. A common-law marriage may not be established in Texas by temporary visits or stopovers in that State. The court so held in *Kelly* v. *Consolidated Underwriters* (300 S. W. 981 [Tex., 1927]). In the above case, after disposing of the above contention by the plaintiff, the court did hold that a common-law marriage was entered into by Joe Kelly and Louisa Lane. This was, however, by virtue of a *subsequent* period of *actual* residence by the parties in Texas and not based on the periods of temporary stays in the State of Texas. This latter holding was affirmed (15 S. W. 2d 229 [Tex., 1929]).

The sixteen-hour stopover in the State of Texas by Robert and Josephine Cruickshank was not of their choosing. Their holding themselves out as man and wife by so registering in a Texas hotel in which the rest of their party stayed for the night was by virtue of a ceremonial marriage performed in California. It was not an act which was intended to result in a new status — a common-law marriage. The parties were already married and that marriage, however voidable, was valid until avoided. (*People* v. *Souleotes,* 26 Cal. App. 309; *Campbell* v. *Campbell,* 78 Cal. App. 745; *McDonald* v. *McDonald,* 6 Cal. 2d 457.)

The presumption of law is that having been married in California their stay in Texas and their holding out as man and wife there was by virtue of that marriage, and it is unreasonable to say that the stopover resulted in a common-law marriage or further " substantiated " the prior marriage as contended by counsel for the defendant, Josephine M. Cruickshank. This court therefore holds that no valid common-law marriage between Robert and Josephine resulted by reason of their acts at the time of the sixteen-hour stopover in the State of Texas.

There is left for determination the question as to whether the ceremonial marriage of the parties in California may be

annulled by this court. Since 1921 the age of legal consent of a male to a marriage in that State is twenty-one years, and a male under the age of twenty-one years and over the age of eighteen years is capable of consenting to and consummating a marriage only with the written consent of his parent or guardian (California Civil Code, § 56). It is unquestioned that a male who marries when under the age of consent and without the written consent of his parent or guardian as required by the California law becomes a partner to a voidable marriage which is valid until judicially annulled under the provisions of sections 82 and 83 of the Civil Code of that State, which so far as here pertinent read as follows:

" § 82 [*Causes for annulling marriages.*] A marriage may be annulled for any of the following causes, existing at the time of the marriage:

" One. That the party in whose behalf it is sought to **have** the marriage annulled was under the age of legal consent, and such marriage was contracted without the consent of his or her parents or guardian, or person having charge of him or her; unless, after attaining the age of consent, such party for any time freely cohabited with the other as husband or wife.

" § 83. [*When and by whom actions must be commenced.*] An action to obtain a decree of nullity of marriage, for causes mentioned in the preceding section, must be commenced within the periods and by the parties, as follows:

" One. For causes mentioned in subdivision one: by the party to the marriage who was married under the age of legal consent, within four years after arriving at the age of consent; or by a parent, guardian, or other person having charge of such nonaged male or female, at any time before such married minor has arrived at the age of legal consent."

In the instant case Robert G. Cruickshank admittedly was at the time of his marriage in California, and ever since has been, a resident of New York State, and was nineteen years old at the time of his marriage which took place without the consent of either of his parents and contrary to their advice and expressed instructions. Furthermore he was under twenty-one years of age (the age of legal consent for marriage in California) when he and the defendant Josephine separated and this action was commenced. Defendant Josephine was twenty-two years old at the time of the marriage and was then a resident of the State of California.

Counsel for the defendant, Josephine Cruickshank, contends that this marriage can be annulled only under the provisions

of section 1133 of the Civil Practice Act of New York as expressly limited by section 1165-a of that act which so far as here pertinent reads as follows: "An action to annul a marriage or for separation may be maintained in either of the following cases: \* \* \* 3. Where the parties were married without the state, and either the plaintiff or the defendant is a resident of the state when the action is commenced, and has been a resident thereof for at least one year continuously at any time prior to the commencement of the action." He further argues that section 82 of the California Civil Code is not applicable herein; that the laws of New York apply as to whether the marriage may be annulled, and that section 7 of the Domestic Relations Law of New York fixes the age of legal consent at eighteen years, and therefore if the marriage ceremony had been performed in New York State a valid marriage would have resulted. In support of that position he cites only the case of *Kinnier* v. *Kinnier* (45 N. Y. 535). That case is clearly distinguishable from the one now under consideration. (See *Simmons* v. *Simmons,* 208 App. Div. 195, 199.)

The general rule of law seems to be that the capacity to marry, being a condition of the marriage contract, is governed by the law of the place of marriage. (Restatement, Conflict of Laws, § 121, comment e; Story on Conflict of Laws [8th ed.], p. 114.) This rule is recognized by the courts of New York. (*Van Voorhis* v. *Brintnall,* 86 N. Y. 18; *Simmons* v. *Simmons, supra.* Other cases may be cited to the same effect.) Exceptions to this rule are found in certain polygamous or incestuous marriages which offend the public policy of New York State. (*Earle* v. *Earle,* 141 App. Div. 611.) The New York courts have also departed from the general rule in two cases which seem to establish another exception. These cases are *Cunningham* v. *Cunningham* (206 N. Y. 341) and *Mitchell* v. *Mitchell* (63 Misc. 580). In both of these cases the court annulled the marriages between residents of the State of New York where they were consummated in foreign jurisdictions in which the marriages were valid. The court in each instance, after recognizing the general rule that the validity of a marriage ceremony is determined by the laws of the place where the marriage is performed, granted an annulment in behalf of the party who was under the age of consent in New York (eighteen years). It justified so doing on the ground that the parties were citizens of the State of New York at the time of the marriage, and each State has the right to determine the marital status of its own citizens. Since the parties attempted to circumvent the public

policy of New York by their marriages in foreign jurisdictions, the annulments were granted.

Counsel for defendant Josephine Cruickshank further urges that the annulment of the marriage between her and Robert Cruickshank would be contrary to the public policy of New York State, and cites *Bays* v. *Bays* (105 Misc. 492). In that case both parties were residents of New York State. They went into the State of Pennsylvania to be married and immediately returned to New York State and consummated the marriage. The plaintiff was twenty years old (under the age of legal consent by the then law of Pennsylvania) but stated his age to be twenty-one years. The defendant was thirty years of age. The record did not reveal why the parties went to the State of Pennsylvania to be married. The court in dismissing the complaint on the merits found (pp. 505–506) that the plaintiff " has not come into court in good conscience and with clean hands ", and further said (p. 499): " It seems to me * * * that * * * they intended to enter into a contract which would be legal where it would be consummated, and the solemn ceremony had the significance to them of establishing a marriage relation which would be valid in this state where they were citizens." Those facts were entirely different from those of the instant case. At the time of his marriage Robert Cruickshank was only nineteen years of age. He was a resident of New York State but stationed in California and far removed from the stabilizing influence of his parents and his home surroundings. Josephine was twenty-two years old and a resident of California. Robert discussed the proposed marriage by telephone with his father, Herbert W. Cruickshank, the plaintiff herein. The latter refused to consent to, and forbade the marriage, and Robert promised him that he would not marry Josephine. The father objected to the marriage because of the youth of Robert, his inability to support a wife and his need for an education, etc. Despite all this Robert and Josephine entered into the ceremonial marriage in California.

Our courts may and do annul marriages performed without the State. This court believes that the circumstances surrounding the marriage now under consideration warrant the granting of the relief demanded in the complaint. The motion by counsel for the defendant, Josephine Cruickshank, for the dismissal of the complaint on the merits is denied, and the motion by counsel for plaintiff for judgment on the merits granting an annulment of the marriage is granted.

Findings and proposed judgment may be submitted accordingly.